**UNITED STATES v. COHEN et al. and four other cases.**

Nos. 10618–10622.

United States Court of Appeals Third Circuit.

Argued April 25, 1952.

Decided June 6, 1952.

Anthony A. Calandra, Newark, N. J., for Cohen, Wright, Grice and Graham.

Charles A. Stanziale, Newark, N. J., for Cohen, Volker, Reade and Price.

Everette L. Doffermyre, Dunn, N. C., for Daniel E. Graham, Jr.

Malcolm McQueen, Fayetteville, N. C., for Roscoe Grice.

Frank E. Healey, for William S. Wright, on the brief.

Charles J. Tyne, Asst. U. S. Atty., Newark, N. J. (Grover C. Richman, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before MARIS, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

This is a consolidated appeal by Martin Cohen, Daniel E. Graham, Jr., Michael Reade, Roscoe Grice, Marion Price and Ona Volker from judgments of conviction upon a jury verdict.

Defendants were indicted[1] for conspiring among themselves and with other persons to commit certain offenses against the United States relating to the purchase, sale, receipt and transportation of narcotics.[2] None of the defendants took the stand nor was any evidence introduced in their behalf. The Government's principal witness was one Charlie D. Herndon, who was named in the indictment as a co-conspirator. The evidence establishes the following:

In May or June of 1946, Herndon and defendant Graham, both residents of North Carolina, met with defendant Cohen at the latter's apartment in Newark, New Jersey, and informed him that they desired to buy narcotics. As a result of this meeting, in January, 1947, Cohen travelled to Fayetteville, North Carolina, and there sold and delivered to Herndon a quantity of morphine, stating that he would see him every thirty or sixty days thereafter. At the same time, Cohen also made a sale to Graham.

---

1. The indictment referred to Section 88 of Title 18 U.S.C. The section was amended by Section 371, effective September 1, 1948. The conspiracy originated during the period embraced by Section 88 and extended into 1950. The reference to Section 88 in the indictment and the failure to refer therein to Section 371 did not prejudice the defendants. Gaunt v. United States, 1 Cir., 1950, 184 F.2d 284, certiorari denied, 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662.

2. In violation of 21 U.S.C.A. § 174; 26 U.S.C. § 2553, and 26 U.S.C. § 2554.

Thereafter, during the years 1947, 1948 and 1949, Cohen made sales of morphine to Herndon in North Carolina, New Jersey and New York, as well as several sales to Graham in North Carolina. Cohen was assisted in these operations by defendant Ona Volker, who accompanied him to North Carolina on at least one occasion.

Herndon purchased these narcotics partly for his own use and partly for resale. During the period under consideration he also made periodic purchases from Graham and defendant Wright. Defendant Grice worked for Herndon for a while, delivering drugs to others in exchange for a share of the profits. Later, he sold narcotics to Herndon as an employee of Graham. Defendant Price was one of Herndon's customers. He purchased large amounts of narcotics from Herndon, partly for his own use and partly for resale.

In December of 1949, Herndon met with Cohen and defendant Reade in St. Pauls, North Carolina. Cohen informed Herndon that he was going out of the narcotics business and that he was turning over his contacts to Reade. Reade then gave Herndon his telephone number in New York City, and told him to get in touch with him whenever he needed narcotics. Thereafter, in January of 1950, Herndon went to New York and contacted Reade by telephone. The two met in Herndon's hotel room and discussed the sale of narcotics, but no transaction resulted because of a disagreement as to price.

To summarize the relationship of each defendant to the others—Cohen and Wright originally secured the narcotics, which they passed on to Graham and Herndon. The latter two disposed of the drugs to users, utilizing the services of Grice and Price to do so. Reade entered the conspiracy as a successor to Cohen. Ona Volker assisted Cohen in his business transactions.

Herndon was arrested by agents of the Bureau of Narcotics in November of 1949.

His cooperation with the agents led to the arrest of some of the others.

These defendants and twenty-one other persons [3] were indicted in the District Court for the District of New Jersey, and tried to a jury. Motions for judgments of acquittal were denied; and defendants were found guilty and sentenced to prison terms ranging from two to five years. This appeal followed.

Defendants urge that their convictions be set aside for the following reasons: (a) the District Court for the District of New Jersey lacked jurisdiction to try the indictment; (b) defendants were prejudiced by the proof of "multiple conspiracies" rather than a single conspiracy; (c) the District Judge erred in admitting testimony of Herndon relating to matters which occurred after his arrest; and (d) the evidence was insufficient to sustain the verdict of the jury. In addition, defendant Wright also contends that his plea of former jeopardy should have been sustained in the court below. We agree that Wright's plea should have been sustained, but cannot subscribe to the remaining defendants' contentions.

Defendants' first two contentions are interdependent, and will be considered together. Defendants refer in their brief to numerous transactions which they claim constituted many separate conspiracies, and then contend that since there was "no acting in concert or * * * common design" within the District of New Jersey, no conspiracy was shown to exist there, hence the District Court was without jurisdiction. We cannot agree. "Venue in the prosecution for conspiracy may be laid in any district in which any act in furtherance thereof was committed by any of the conspirators." Ladner v. United States, 5 Cir., 1948, 168 F.2d 771, 773; Hyde v. United States, 1912, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114.

The evidence adduced in the instant case clearly established a single con-

3. Of the twenty-eight conspirators named in the indictment, two died prior to trial; four were removed for trial in other judicial districts; the Government moved for severance as to six; and four were fugitives at the time of trial. Of the twelve tried in the court below, judgments of acquittal were entered as to five, and seven, the present appellants, were convicted and sentenced.

spiracy, many acts in furtherance of which took place in New Jersey. It is immaterial that some of the activities occurred beyond the borders of New Jersey and that some of the conspirators did not know one another. It was established that, during the years in question, all the defendants were responsible for a steady flow of narcotics southward from Newark and New York. "That being true, a jury might have found that all the accused were embarked upon a venture, in all parts of which each was a participant, and an abettor in the sense that the success of that part with which he was immediately concerned, was dependent upon the success of the whole." United States v. Bruno, et al., 2 Cir., 1939, 105 F.2d 921, 922, reversed on other grounds, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257. See also Lefco v. U. S., 3 Cir., 1934, 74 F.2d 66.

█ It is next asserted, especially with reference to defendant Ona Volker, that there was not sufficient evidence to sustain the jury's verdict. While there was no proof that Volker engaged directly in the buying or selling of narcotics, there was adequate proof of her connection with the conspiracy. It was shown that on one occasion she accompanied Cohen to North Carolina and was present at a meeting between Cohen, Graham and Herndon at which the price of narcotics was discussed. Herndon also testified that she contacted him on three separate occasions in the furtherance of Cohen's trade in narcotics. "Once the existence of a conspiracy is clearly established, slight evidence may be sufficient to connect a defendant with it." Nye & Nissen v. United States, 9 Cir., 1948, 168 F.2d 846, 852, affirmed 1949, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919. A fortiori, the evidence was sufficient as to the others, Herndon having testified to at least one direct dealing with each of them. Cf. Goukler v. U. S., 3 Cir. 1923, 294 F. 274.

█ Defendants also allege prejudicial error in the admission by the District Judge of certain portions of Herndon's testimony. Herndon was arrested on November 10, 1949. After that date, he made certain contacts with the other conspirators under the direction and surveillance of the narcotics agents. Defendants contend that his testimony as to what transpired at these meetings was improperly received in evidence, and that its admission was highly prejudicial. This position is untenable. The law is clear that the withdrawal of a single conspirator, by arrest or otherwise, does not terminate the conspiracy or change the status of the remaining members. Marino v. United States, 9 Cir., 1937, 91 F.2d 691, 113 A.L. R. 975, certiorari denied, Gullo v. United States, 1938, 302 U.S. 764, 58 S.Ct. 410, 82 L.Ed. 593. The activities of the other conspirators after the date of Herndon's arrest were still in furtherance of the ends of the conspiracy. Herndon's testimony relative to these activities was most relevant and perfectly admissible.

█ With regard to defendant Wright, we are convinced that the District Judge erred in rejecting his double jeopardy plea. Wright, with others, was convicted in the District Court for the Southern District of New York for conspiracy to violate, and for substantive violations of, the narcotics laws of the United States. The overt acts charged in the New York indictment are the same as those charged in the instant indictment. While a prosecution for one conspiracy is no bar to a prosecution for participation in another, a single conspiracy cannot be split up for the purpose of prosecution. United States v. Owen, D.C.N.D.Ill.1927, 21 F.2d 868; 22 C.J.S., Criminal Law, § 288. The effect of the New York indictment was merely to carve a smaller conspiracy, in point of number of defendants and period of time involved, out of the larger conspiracy now under consideration. Wright's prior conviction is clearly a bar herein.

For the reasons stated, the judgment as to Wright will be reversed and the cause remanded with directions to acquit. The judgments as to the other defendants will be affirmed.