UNITED STATES of America

v.

Vincent McGOWAN, Defendant.

Crim. No. 262–73.

United States District Court,
D. New Jersey.

Dec. 3, 1974.

tors and other persons unknown to the grand jury for certain violations of the narcotics laws. The indictment charged in separate counts that defendant and his coconspirators had (1) conspired to import marijuana into the United States in violation of 21 U.S.C. §§ 952(a), 960, and (2) conspired to distribute marijuana, and to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 846.[1]

Following severance of the cases against four named conspirators, McGowan was tried together with two other defendants. The principal evidence against him was the testimony of James Scott, a participant in the alleged conspiracy. Scott testified that, on three occasions, McGowan had met Scott and Jack Horniak, another conspirator, in Mexico, and on each occasion had delivered to them the contents of a small van filled with marijuana. Scott also testified that McGowan had been present at several meetings among the conspirators in New York. The remaining evidence against McGowan consisted of records of telephone calls from · Mexico to New York between McGowan and his codefendants during the period covered by the alleged conspiracy.

The defense did not contest the issue of specific intent. It consisted almost entirely of an attack upon the credibility of Scott. Nevertheless, the jury found McGowan not guilty on count 2[2] but was unable to reach a verdict on count 1. McGowan now moves to dismiss the latter count on grounds of double jeopardy and collateral estoppel.

■ That a retrial on count 1 would have been permissible had it been charged in a single-count indictment is undisputed. *E. g.,* United States v. Perez, 9 Wheat. (22 U.S.) 579, 6 L.Ed. 165 (1824). In that type of situation, a second proceeding is justified because (1)

Jonathan L. Goldstein, U. S. Atty., William Braniff, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Gerald B. Lefcourt, New York City, for defendant.

## OPINION

COOLAHAN, District Judge.

Defendant Vincent McGowan was indicted along with six named coconspira-

---

1. The indictment contained four counts in all. The remaining counts, charging substantive offenses, alleged that the defendants had (3) knowingly concealed and facilitated transporation of marijuana, knowing it had been illegally imported, in violation of §§ 545 and 2; and (4) possessed marijuana with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

2. The jury also acquitted McGowan of the substantive offenses charged in counts 3 and 4. See note 1, *supra.*

it is essential to a fair and final determination of the case, *see id.*, and (2) the inconvenience to defendant of multiple trials is due in no degree to governmental harassment. *Cf.* Gori v. United States, 367 U.S. 364, 369, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961). The first question presented in this case is what additional considerations are called into play by the joinder of count 2 in the same indictment and the jury's acquittal of that charge.

Defendant contends that, since a retrial on count 1 must follow an earlier acquittal on count 2, the case is indistinguishable from one in which defendant was indicted, tried, and acquitted of conspiring to distribute marijuana and later reindicted and retried for conspiring to import it. If defendant's reasoning were correct, it would follow that if the conspiracy offenses charged in counts 1 and 2 were the same offense under the "same evidence" test, then a retrial on count 1 would place defendant twice in jeopardy.

■ Specifically, defendant relies on Calvaresi v. United States, 216 F.2d 891 (10th Cir. 1954), and United States v. Cohen, 197 F.2d 26 (3d Cir. 1952).[3] In *Calvaresi*, an indictment was returned against seven defendants charging a conspiracy to influence and to bribe jurors in a federal trial in violation of 18 U.S.C. § 371. Later a second indictment was returned against the same seven which was "identical in substance," 216 F.2d at 896, with the first, but for the addition of one coconspirator and two overt acts. *Id.* Two of the seven pleaded guilty to the first indictment, but the government proceeded to try them with the other six conspirators on the second. On appeal, the government conceded that both indictments charged the same conspiracy. The court concluded "without more" that the trial on the second indictment constituted double jeopardy. *Id.* at 901. In *Cohen*, the Third Circuit reached the same conclusion as to one defendant who had been indicted and convicted in New York of conspiring to violate the narcotics laws and later indicted and convicted in New Jersey of the same violation. The New York indictment, the court found, had merely been carved out of the larger conspiracy charged in the New Jersey indictment. *Id.* at 29.

At issue in cases like *Calvaresi* and *Cohen*, although framed in language of the "same evidence" test, is the question when fairness requires that all offenses arising from a single transaction be tried together. *See* United States v. Mallah, 503 F.2d 971, at 985 n.7 (2d Cir. Sept. 23, 1974). In this case, however, that question never arose; the government made no attempt to harass the defendant with multiple prosecutions by carving separate conspiracies from a single offense. The Court must decide simply whether defendant, who has been properly tried on a multi-count indictment, may be retried on the count on which the jury failed to agree. The holdings in *Cohen* and *Calvaresi* play no part in the resolution of this question.[4]

---

3. Even if the Court accepted defendant's premise that the "same evidence" test is applicable to the problem in this case, neither *Calvaresi* nor *Cohen* would apply to the facts here.

    Neither case involved a conspiracy which violated separate statutes. The rule is settled that the government may not "artificially divide" a single conspiracy violating a single statute into smaller conspiracies for purposes of multiple punishment or prosecution. *E. g.*, United States v. Tanner, 471 F.2d 128, 141–142 (7th Cir. 1972). Authorities are divided, however, on the question whether the government may separately prosecute and punish a single conspiracy which violates two conspiracy provisions of the narcotics laws. *Compare* United States v. Nathan, 476 F.2d 456 (2d Cir. 1973), cert. denied, 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed. 2d 56 (1973), *with* United States v. Adcock, 487 F.2d 637 (6th Cir. 1973).

4. Similar reasoning was utilized by the Ninth Circuit in Forsberg v. United States, 351 F.2d 242 (9th Cir. 1965). That case involved a two-count indictment charging (1) assault with intent to commit murder and (2) assault with a dangerous weapon and intent to do bodily harm. The jury acquitted on the greater offense but was unable to agree on the lesser. On appeal of a conviction on the

The defendant also relies on cases holding that (1) a single conspiracy in fact is but a single "offense" in law, even though it contemplates the violation of several statutes, *see* Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), or actually violates several separate conspiracy statutes, *see* United States v. Adcock, 487 F.2d 637 (6th Cir. 1973), and therefore (2) only a single punishment may be imposed for multiple conspiracy convictions under a multi-count indictment. *Braverman, supra,* 317 U.S. at 54, 63 S.Ct. 99; *Adcock, supra,* 487 F.2d at 639. This case, of course, does not present the question whether the defendant can be given separate sentences on counts 1 and 2. Presumably, then, defendant finds *Braverman* and *Adcock* applicable because, if two offenses must be punished as one crime, they must be tried as one crime. The Court has already rejected, however, the syllogism that, because two offenses must be joined for trial, an acquittal of one must constitute, in effect, an acquittal of the other.

Thus *Braverman* and *Adcock* must be deemed inapplicable for the reasons discussed above.[5]

Defendant's final contention is that his motion should be granted on collateral estoppel grounds. He urges, and the government agrees, that only one conspiracy was charged and proved.[6] Both parties also agree that proof that McGowan joined the conspiracy (with intent to import) would be essential to convict on a retrial on count 1.[7] At issue is the question what matters were "necessarily decided" by his acquittal on count 2.

Defendant contends that the jury must have found that he was not one of the conspirators. He reasons that the evidence used to prove identity formed a proper base for an inference of intent to distribute. *See* United States v. Anderson, 468 F.2d 1280, 1283 (10th Cir. 1972). Further, the inference was unrebutted. But notwithstanding this unrebutted inference, the government asserts that the jury decided only that Mc-

lesser count following retrial, the court recognized that the prior acquittal would have barred a later prosecution for the lesser offense if the first offense was tried on a single-count indictment. 351 F.2d at 248. It reasoned, however, that the retrial was permissible because the original two-count indictment had been proper and because it was "clear that the jury agreed that the Government had failed to prove assault with intent to kill, but was unable to agree upon the second count involving the lesser degree of assault." *Id. Accord,* United States v. Scott, 150 U.S.App.D.C. 323, 464 F.2d 832 (1972).

5. The defendant's reliance on *Adcock* is unsound for another reason. The case held that separate punishments could not be imposed for a conspiracy which violated two separate conspiracy provisions of the narcotics laws. The court relied principally on *Braverman, supra,* which held that separate punishments could not be imposed for a single conspiracy charged under § 37 of the Criminal Code (now 18 U.S.C. § 371) which alleged as objects the violation of seven sections of the revenue laws. That *Braverman* did not establish an inflexible rule that all conspiracies which either violate separate statutes, or which allege the violation of several statutes as objects of the agreement,

must be treated as a single offense was suggested in American Tobacco Co. v. United States, 328 U.S. 781, 787, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). Rather, the permissibility of multiple punishments appears to turn upon legislative intent as divined from the statutory scheme set forth by Congress. *Id. See generally,* "Developments in the Law: Criminal Conspiracy," 72 Harv.L.Rev. 921, 963–68 (1959). Since the narcotics laws expressly make criminal both conspiracy offenses involved in *Adcock,* and since the Supreme Court has construed those laws as indicating a legislative policy "not of lenity but of severity," Gore v. United States, 357 U.S. 386, 391, 78 S.Ct. 1280, 1284, 2 L.Ed. 2d 1405 (1958), some doubt exists as to whether *Adcock* was properly decided.

6. Accordingly the Court need not determine whether the evidence would support a finding of separate conspiracies. *See* United States v. Young, 503 F.2d 1072 (3d Cir. Oct. 10, 1974).

7. Thus it is unnecessary to determine whether the government could assert that its original theory of a single conspiracy was erroneous. Although not proscribed by collateral estoppel principles, that practice would clearly violate the prohibition against artificially dividing a conspiracy. *See, e. g.,* United States v. Young, *supra,* note 6.

Gowan lacked intent to distribute. It rejects defendant's hypothesis because the same jury failed to acquit on count 1. If it doubted that McGowan was a conspirator, the argument concludes, the jury would have acquitted on both counts.

The question for the Court is whether it should ignore the jury's inconsistency. Stated differently, the question is whether defendant is entitled to the benefit of a conclusive presumption that a demonstrably irrational jury reached a rational acquittal verdict. If he is not, the jury's failure to acquit on count 1 makes impossible the conclusion that the issue of his conspiratorial involvement was "necessarily determined."

Defendant relies on Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), to establish that he would be entitled to a presumption of rationality if he were first tried on count 1 alone and later tried on count 2. *See* 397 U.S. at 444, 90 S.Ct. 1189. But for the initial joinder for trial of both counts in this case and the jury's inconsistency, the facts of *Ashe* are substantially similar to the facts presented here.

Petitioner Ashe and three others were charged with seven offenses: armed robbery of six victims of a single holdup and theft of a car belonging to one of the victims. Although charged with these seven related offenses, however, he was first tried for robbing only one of the six victims. The only issue in dispute at trial was whether Ashe was one of the robbers. 397 U.S. at 438, 90 S.Ct. 1189. The jury apparently disbelieved the State's evidence tending to prove identity and returned a general verdict of not guilty.

Six weeks later Ashe was tried again. The second charge was identical to the first except a different victim was named. The evidence also was substantially the same, but the strength of the testimony identifying Ashe as one of the thieves was greater. The second jury convicted. After determining that the federal collateral estoppel rule was binding on the States, the Supreme Court easily disposed of the question what issue the first jury had decided in acquitting Ashe.

> [T]he record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible.

[*Id.* at 445, 90 S.Ct. at 1195]

Speaking more generally, the *Ashe* Court set forth liberal guidelines for applying collateral estoppel:

> [T]he rule . . . is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

397 U.S. at 444, 90 S.Ct. at 1194, *quoting* Mayers & Yarborough, "Bis Vexari: New Trials and Successive Prosecutions,' 74 Harv.L.Rev. 1, 38–39 (1959).

An examination of *Ashe* suggests that these guidelines were designed to curb two separate but closely related abuses. The first is allowing a prosecutor virtually unbridled discretion to sever related offenses for purposes of trial. *E. g.,* 397 U.S. at 438, 90 S.Ct. 1189. The *Ashe* rule induces a prosecutor to join for trial all offenses having a common issue of ultimate fact. But the first abuse is not present in this case, as the Court previously noted.

The second abuse, however, is pertinent here. It consists of compelling a defendant to prove his innocence to two or more juries in order to avoid punishment. *See* 397 U.S. at 446, 90 S.Ct. 1189. More precisely, since the bases for jury determinations are a matter of speculation in most criminal cases, the abuse lies in compelling a relitigation of the question of innocence even though it appears substantially certain that the first jury decided that matter in the accused's favor.

Courts prior to *Ashe* routinely violated the accused's guarantee against this abuse. In construing an acquittal narrowly against the defendant, a court would entertain a presumption that the jury acted irrationally. Specifically, the jury was presumed to have rested its result on a ground which the State proved by substantial evidence and which the defendant never contested. *See, e. g.,* State v. Hoag, 21 N.J. 496, 122 A.2d 628 (1956). This presumption of irrationality is the second mischief which the *Ashe* guidelines were designed to remedy.

But this analysis of *Ashe* hardly compels the conclusion that the jury's inconsistency in this case should be ignored. *Ashe* of course did not consider the question whether a jury should be conclusively presumed rational in rendering an acquittal. But an affirmative answer to that question would contradict the Court's own directives to consider "all the circumstances of the proceedings," 397 U.S. at 444, 90 S.Ct. at 1194, and to apply collateral estoppel with "realism and rationality." *Id.* Moreover, defendant cannot be treated unfairly merely because the Court recognizes, rather than presumes, that the jury acted irrationally. Indeed, ignoring the jury's inconsistency would treat the government unfairly. All relevant data simply fail to indicate that the jury must have found McGowan innocent of all conspiratorial involvement. Rather, they reveal substantial uncertainty whether the acquittal verdict determined anything at all about his identity as a conspirator. The Court cannot conclude that *Ashe* sought to resolve such a high degree of uncertainty conclusively in the accused's favor.

Since the nature of the jury's deliberations is not known, it cannot be determined whether the error or inconsistency prejudiced defendant or the government. Either proposition is equally plausible. But the government cannot, *see* Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904), and does not attempt to, deprive defendant of the benefit of the acquittal on count 2. In fairness, he ought not be permitted to rest on that verdict to collaterally estop a retrial on count 1. *See* United States v. Maybury, 274 F.2d 899, 905 (2d Cir. 1960).

Since the jury's inconsistency must be considered, the Court cannot conclude that defendant's acquittal "necessarily determined" that he never joined the conspiracy alleged by the government. Defendant's other grounds for dismissal having been already rejected, his motion to dismiss count 1 must be denied.