UNITED STATES of America ex rel.
Joseph A. TRIANO, Petitioner,

v.

SUPERIOR COURT OF NEW JERSEY,
LAW DIVISION, et al.,
Respondents.

Civ. A. No. 75–98.

United States District Court,
D. New Jersey.

May 6, 1975.

Leonard Meyerson, Jersey City, N.J., for petitioner.

James T. O'Halloran, Hudson County Prosecutor, by Gary Newman, Asst. Prosecutor, for respondents.

## OPINION AND ORDER

STERN, District Judge.

This is a petition for habeas corpus, brought on the eve of petitioner's state

court trial, which alleges that the pending state prosecution violates his rights under the Double Jeopardy Clause of the Constitution.

On December 2, 1971, the Hudson County Grand Jury charged petitioner, in Indictment No. 326–71, with bribery (Count 1), unlawful taking (Count 2) and misconduct in office (Count 3).

Count 1 charges petitioner with accepting a bribe in connection with government service, in violation of N.J.S.A. 2A:93–6, alleging that he did "willfully, knowingly, unlawfully and corruptly received approximately $100 in cash as a bribe, present or reward" in return for obtaining an improper disposition of a pending criminal complaint. (RB: 25)

Count 2 of the indictment charges petitioner with unlawful taking, in violation of N.J.S.A. 2A:105–1, alleging that he did "willfully, knowingly, unlawfully and by color of his office" receive "from Abraham J. Chasnoff . . . a fee and reward in the amount of approximately One Hundred Dollars ($100.00) in cash, the same not allowed by law to the said Joseph A. Triano for performing his duties as Deputy Clerk of the Criminal Division of the Hudson County District Court." (RB: 25)

Count 3 of the indictment charges petitioner with misconduct in office, in violation of N.J.S.A. 2A:85–1, based on three separate acts allegedly committed by him: (a) representing to Chasnoff that petitioner would obtain a favorable disposition of the charges against James Cairns; (b) amending the summons of James Cairns; and (c) accepting $100.-00. (PB:2)

The jury returned a verdict of not guilty on Counts 1 and 2, but was unable to reach a verdict on Count 3. Accordingly, judgment of acquittal was entered on Counts 1 and 2, and a mistrial was declared as to Count 3.

Petitioner successfully sought an order in Superior Court dismissing Count 3 on grounds of double jeopardy, which was granted on a theory of collateral estoppel by the trial court, Young, J.S.C., on January 22, 1973. The State appealed from the judgment of dismissal, and on February 21, 1974, the Appellate Division of the Superior Court reversed the dismissal and ordered a plenary trial. Petitioner's attempts to secure review by the New Jersey Supreme Court were denied on April 30, 1974. A petition for certiorari was denied by the United States Supreme Court on October 15, 1974, Justices Brennan and Stewart dissenting.

The State now seeks to try petitioner for misconduct in office, the offense charged in Count 3, based on all three of the allegations of wrongful conduct set forth in that Count.

The matter was set for trial on January 24, 1975 before Judge Thuring in Superior Court. Petitioner moved to preclude the State from introducing at retrial substantive evidence of the bribery and unlawful taking of which the first jury exonerated him. After oral argument, Judge Thuring denied the motion in an opinion dated January 20, 1975. The instant petition was filed in this Court on January 21, 1975.

At a hearing before this Court on January 21, 1975, the State represented that it would not move the indictment for retrial while the matter was pending before this Court. (Tr. 1/21/75:4–6; 25–26)

On the morning of January 22, 1975, however, the Court received a telephone call from counsel for petitioner. Counsel for the State was present with counsel for petitioner when the call was made, and also spoke with the Court. At that time, the Court was informed that superiors of the Assistant Prosecutor who had appeared the previous day had "overruled" the State's representation that the matter would not be moved for retrial, and that the State now intended to proceed with the retrial as scheduled, on Friday, January 24, 1975. (Tr. 1/22/75:6) The parties were ordered to appear before this Court for an emergent hearing.

The Fifth Amendment, as applicable to the states through the Fourteenth Amendment, Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), reads in pertinent part:

No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb; . . ..

█ It is clear from judicial construction of the Double Jeopardy Clause that the evil against which the clause protects a state defendant is not a second *conviction* or a second *punishment* for the same crime. Rather, the provision protects an individual against the second *trial* itself. As the court noted in Ashe v. Swenson, 397 U.S. 436, 445–446, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970), in holding that federal principles of collateral estoppel were embodied in the Double Jeopardy Clause:

For whatever else that constitutional guarantee may embrace, North Carolina v. Pearce, 395 U.S. 711, 717 [89 S.Ct. 2072, 2076, 23 L.Ed.2d 656], it surely protects a man who has been acquitted from having to "run the gantlet" a second time. Green v. United States, 355 U.S. 184, 190 [78 S.Ct. 221, 225, 2 L.Ed.2d 199].

At the hearing the State of New Jersey announced its intention to divest this Court of jurisdiction by moving the retrial before this Court could determine whether the very moving of the case in state court would do violence to the United States Constitution.[1]

Accordingly, the Court entered an order on January 23, 1975 (1) staying all proceedings in the Superior Court in the matter of State of New Jersey v. Joseph A. Triano, Indictment No. 326–71, pursuant to 28 U.S.C. § 2251;[2] (2) issuing a Writ of Habeas Corpus ad Testificandum removing all restraints on petitioner pending this Court's disposition of the petition;[3] and (3) enjoining the Hudson County Prosecutor and his staff

---

1. After extensive argument, there occurred the following colloquy between the Court and counsel for the State:

MR. MEGILL: . . . Believe me, I don't want your Honor to get the impression that what our office has done, through my direction, is in any way attempting to be an affront to your Honor. It is in the part of the legal spectre of the State that the State feels it is permitted or entitled to go forward with the trial.

THE COURT: Do you still feel that way?

MR. MEGILL: I do, Judge, I do. . . .

\* \* \* \* \*

THE COURT: Will not your unilateral action moot the issue before me, namely whether or not a habeas should be issued to prevent the State trial?

\* \* \* \* \*

What I am asking you is this: Will you not, by your unilateral action deprive me of jurisdiction before I have determined whether I have jurisdiction? Please answer the question.

MR. MEGILL: Our moving the trial will if your Honor hasn't yet decided by Friday whether your Honor has jurisdiction, then our action would do that. . . .

(Tr. 1/22/75: 23–24)

THE COURT: Will you, pending the receipt of briefs, and argument on the issue, move the case for trial? . . .

MR. MEGILL: I would move it on Friday, I would.

THE COURT: All right. . . . I am going to stop the prosecution pendente lite here. I cannot, consistent with the duty I owe to enforce the Constitution of the United States, permit the Hudson County Prosecutor's Office unilaterally to deprive this Court of jurisdiction.

(Tr. 1/22/75: 29)

2. § 2251. Stay of State court proceedings

A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

After the granting of such a stay, any such proceeding in any State court or by or under the authority of any State shall be void. If no stay is granted, any such proceeding shall be as valid as if no habeas corpus proceedings or appeal were pending.

3. *See* Johnston v. Marsh, 227 F.2d 528 (3rd Cir. 1955); United States ex rel. Slough v. Yeager, 449 F.2d 755 (3rd Cir. 1971).

from proceeding with the prosecution of petitioner pending disposition of the petition by this Court, pursuant to 28 U. S.C. § 1651(a).[4]

■ This Court has jurisdiction to consider this petition in advance of the state trial, under 28 U.S.C. § 2241(c)(3). Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973).

■ Petitioner is presently free on his own recognizance pending retrial on Count 3 of Indictment No. 326–71 in Superior Court, Hudson County. A defendant released on his own recognizance is "in custody" within the meaning of § 2241, whether he is awaiting sentence, Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), or awaiting trial, United States ex rel. Russo v. Superior Court, 483 F.2d 7, 12 (3rd Cir. 1973), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L. Ed.2d 315 (1973). Although there is no requirement in § 2241(c)(3) that state remedies be exhausted before a pretrial federal habeas proceeding may be maintained, an exhaustion requirement has nevertheless developed in case law, and "although there is a distinction in the statutory language of §§ 2254 and 2241, there is no distinction insofar as the exhaustion requirement is concerned." Moore v. DeYoung, 515 F.2d 437, at 442 (3rd Cir. 1975).

■ Although this Court has jurisdiction to consider a pretrial petition for habeas corpus without exhaustion of state remedies, cf. Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), the question arises whether that jurisdiction should be exercised.

In Royall, the petitioner was indicted in state court for selling a bond coupon without a license. Before trial, he petitioned for a federal writ of habeas corpus, on the ground that the state statute upon which the indictment was predicated violated the Contract Clause, insofar as it was applied to the owners of coupons. The court, while noting that the statute gave a federal court the power to grant the writ before trial, upon a sufficient showing of unconstitutional custody and even where the state court was fully competent to pass on the federal defense at trial, held that the statute did not always "imperatively require [the federal court], by writ of habeas corpus, to wrest the petitioner from the custody of the state officers in advance of his trial in the state court." The court continued, 117 U.S. at 251–252, 6 S.Ct. at 740:

> We cannot suppose that congress intended to compel these [federal] courts . . . to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in state courts exercising authority within the same territorial limits, where the accused claims that he is held in custody in violation of the constitution of the United States. . . . That discretion [as to the time and mode in which the court will exert its statutory powers] should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the constitution.

> \* \* \* \* \* \*

> The [federal] court was not at liberty, under the circumstances disclosed, to presume that the decision of the state court would be otherwise than is required by the fundamental law of the land, or that it would disregard the settled principles of constitutional law announced by this court, upon which is clearly conferred the power to de-

---

4. § 1651. Writs
 (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

cide ultimately and finally all cases arising under the constitution and laws of the United States.

It is clear that "the references in *Royall* to the trial court's 'discretion' were not to be taken seriously; [the Court] routinely reversed grants of the writ prior to exhaustion of state remedies where no special circumstances were present." P. Bator, C. Mishkin, D. Shapiro, H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 1488 (2nd ed. 1973).

In *Braden*, Mr. Justice Rehnquist summarized the *Royall* doctrine:

> The history of habeas corpus and the principles of federalism strongly support the approach established by Ex parte Royall, *supra,* that, absent extra-ordinary circumstances, federal habeas corpus should not be used to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court.

410 U.S. at 505, 93 S.Ct. at 1135 (dissenting opinion of Rehnquist, J.). The *Braden* majority agreed with this summary of the law, while distinguishing it from the case then before the court. 410 U.S. 489, 93 S.Ct. 1123.

■ The rule requiring exhaustion of state remedies, then, " 'is not one defining power but one which relates to the appropriate exercise of power.' Bowen v. Johnston, 306 U.S. 19, 27 [59 S.Ct. 442, 446, 83 L.Ed. 455]." Fay v. Noia, 372 U.S. 391, 420, 83 S.Ct. 822, 839, 9 L.Ed.2d 839 (1963).

The United States Court of Appeals for the Third Circuit recently stated the law in this area:

> The teaching derived from these authorities may be stated as:
>
> (1) federal courts have "pre-trial" habeas corpus jurisdiction;
>
> (2) that jurisdiction without exhaustion should not be exercised at the pre-trial stage unless extraordinary circumstances are present. *See* Frisbie v. Collins, 342 U.S. 519, 520–521, 72 S.Ct. 509, 96 L.Ed. 541 (1952); Reid v. Jones, 187 U.S. 153, 154, 23 S.Ct. 89, 47 L.Ed. 116 (1902); United States ex rel. Richardson v. Rundle, 461 F.2d 860, 864–65 (3rd Cir. 1972), *cert. denied* 410 U.S. 911, 93 S.Ct. 971, 35 L.Ed.2d 273 (1973).
>
> (3) where there are no extraordinary circumstances and where petitioner seeks to litigate the merits of a constitutional defense to a state criminal charge, the district court should exercise its "pre-trial" habeas jurisdiction only if petitioner makes a special showing of the need for such adjudication and has exhausted state remedies. *Braden, supra.*

*Moore, supra,* at 443.

■ Petitioner maintains that his claim of double jeopardy alleges extraordinary circumstances justifying and requiring the availability of a federal forum to consider the merits before the commencement of the state trial. The Court agrees.[5]

> Under Judge Thuring's ruling, at retrial, the state will be permitted to present the full panoply of events charging misconduct in office under the Third Count including the right to introduce for substantive purposes evidence relative to the alleged taking of the bribe money.

Op., at 1069–1070.

The State has announced that it will use such evidence at petitioner's retrial. (Tr. 1/21/75: 21) It is the conclusion of this Court that in the face of such a history, a federal court cannot simply refuse to hear the matter, presumably on grounds of comity, thus effectively forcing petitioner again to "run the gantlet" of trial.

If petitioner's position is correct on the merits, then the state courts have declined to follow "the fundamental law

---

5. This issue was expressly left open by the Court of Appeals in *Moore.* Moore v. DeYoung, *supra,* at 446, n. 11.

of the land" by ordering him "twice placed in jeopardy for the same offense." If petitioner is correct, post-conviction federal relief will be insufficient to vindicate his federal right against double jeopardy in the event of conviction, and unavailable in the event of acquittal.

In such a situation, there exist "exceptional circumstances of particular urgency," and "a federal court should entertain [the] petition for habeas corpus, else [petitioner] would be remediless." Ex parte Hawk, 321 U.S. 114, 117–118, 64 S.Ct. 448, 450, 88 L.Ed. 572 (1944). The instant case meets this test; accordingly, this Court will exercise its jurisdiction to consider the merits.

■ As the Court has noted, the Fifth Amendment prohibition of double jeopardy binds the states through the Due Process Clause of the Fourteenth Amendment. Benton v. Maryland, *supra*.

■ In Ashe v. Swenson, *supra*, the Supreme Court declared the doctrine of collateral estoppel to be of constitutional dimension, for the purposes of the Fifth Amendment, and embodied in the Double Jeopardy Clause. 397 U.S. at 445, 90 S. Ct. 1189.

The fundamental question to be determined here is the test to be applied in measuring the collateral estoppel effect of the prior proceedings for double jeopardy purposes. In *Ashe,* the court rejected the traditional "same cause of action" and "same evidence" tests:

The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a ra-

tional jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Sealfon v. United States, 332 U.S. 575, 579 [68 S.Ct. 237, 240, 92 L.Ed. 180]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal. [Footnotes omitted.]

397 U.S. at 444, 90 S.Ct. at 1194.

In the instant case, the "issue which the defendant [petitioner] seeks to foreclose from consideration" at the second trial is that of "bribery and extortion [unlawful taking] in which the key evidence offered was a 'marked hundred dollar bill.'" (PB: 15)

■ It should be noted, and petitioner concedes (Tr. 1/21/75: 16–20), that the acquittals on Counts 1 and 2 do not, without more, bar prosecution for the crime charged in Count 3 under the doctrine of *res judicata.* Bribery, unlawful taking and misconduct in office are all separate crimes, each prohibited by a separate statute. Neither bribery nor unlawful taking are lesser included offenses or necessary elements of the crime of misconduct in office, which may be committed by other kinds of activities, or by failure to act. Moreover, whatever may be said about the possible overlapping between the first two counts and the first and third allegations of Count 3, that is, between the bribery charged in Count 1, the unlawful taking charged in Count 2 and paragraphs (a) and (c) of Count 3, where petitioner is accused of misconduct in requesting the $100.00 (a) and accepting the $100.00 (c), paragraph (b) of Count 3, which alleges misconduct by him in altering court papers is, as a matter of law, a separate allegation of wrongdoing. Whether or not, under the facts of this

case, the crimes charged are separable for purposes of trial, petitioner's acquittal of accepting a bribe (Count 1) and of unlawfully taking a fee or reward (Count 2) does not thereby render *res judicata* the state's allegation that he committed misconduct in office by altering court documents.

Paragraphs (a) and (c) of Count 3 may well be barred by collateral estoppel, as embodied in the constitutional protection against double jeopardy. Ashe v. Swenson, *supra*. Although the crime of misconduct in office and the crimes of bribery and unlawful taking are indeed separate crimes, they overlap when the state charges the identical conduct, that is, the solicitation or the receipt of an illegal payment, as *the* unlawful taking and *the* specific act of misconduct in office. Ashe v. Swenson, *supra*, 397 U.S. at 453–454, 90 S.Ct. 1189, (concurring opinion of Brennan, J.); *cf.* Ciuzio v. United States, 416 U. S. 995, 996–997, 94 S.Ct. 2410, 40 L.Ed. 2d 774 (1974), denying cert. to United States v. Cioffi, et al., 487 F.2d 492 (2nd Cir. 1973) (dissenting opinion of Brennan, J.). This may be the case with respect to two of the allegations of the misconduct charge, paragraph (a) (the allegation of the $100.00 solicitation) and paragraph (c) (the allegation of the payment). Petitioner contends the State is collaterally estopped from proving those two charges at the forthcoming trial by virtue of petitioner's prior acquittal on precisely those charges at the earlier trial.

 Just as the protection against double jeopardy combines with elementary principles of *res judicata* to prevent the State from twice prosecuting a defendant for the same statutory crime, so does double jeopardy encompass the doctrine of collateral estoppel as well, prohibiting the state from twice asserting identical factual allegations against an individual, where the first assertion of those allegations resulted in an acquittal. The doctrine of double jeopardy thus includes not merely the prohibition against twice prosecuting for the same *crime*, but also the proscription of twice prosecuting on the basis of the same *factual contentions,* albeit for different crimes, at least after those facts have been judicially determined against the State.[6]

However, while the Double Jeopardy Clause of the United States Constitution prohibits second prosecutions which are based on collaterally-estopped factual contentions, to the same extent as it prohibits a second prosecution for a crime already *res judicata* by virtue of a prior acquittal or conviction, a United States Court examining the constitutionality of the second prosecution is in a materially different position, depending on which of the two species of double jeopardy is alleged.

In the first instance the task is relatively simple, since a mere comparison of the two indictments will normally reveal whether the defendant is threatened with double prosecution for the same crime. On the other hand, the second type of double jeopardy analysis is different, and, in some cases, may be an impossible pretrial determination.

To decide whether the State will attempt to rely, in a second prosecution, on factual contentions necessarily determined against it in a prior state trial of the same defendant, the federal court would first determine the facts which were necessarily decided against the State under the earlier general verdict of the state court jury. It would then be necessary for the federal court to make a *pretrial* determination whether the State could prove the different crime charged against the same defendant without relying on facts previously determined in his favor.

Obviously, this is an entirely different problem from that posed by the simple

---

**6.** It may be that after a conviction, the identical facts may be used again, in addition to other facts, to prove an entirely different crime which is not a lesser included offense of the first. But that is not this case and the Court does not reach it.

question of whether a person is threatened with a second prosecution for the same crime. It may be that in some cases it will be readily apparent, from the language of the indictment, that the State intends to try to introduce evidence foreclosed to it by collateral estoppel, but that is not to say that it would be clear either that the state trial judge would permit such evidence to be admitted, or that it would be impossible to prove the crime charged without relying on the impermissible evidence. This is precisely the case at bar. It is, on the face of the indictment, entirely possible for the prosecution to prove that petitioner committed the crime charged simply by proving that he altered the summonses, without reference to any evidence concerning the $100.00. Whether as a practical matter such independent proof exists, or whether as a fact of litigation it is possible to segregate the one from the other, is simply beside the point. The fact remains that no federal court reading Count 3 can hold, as a matter of law, that Count 3 cannot be *moved for trial* without requiring petitioner to begin the second run of the gantlet, in violation of the United States Constitution.

 In summary, when the crime itself is a thing adjudged, and the State indicts or moves to try an individual for the crime already disposed of, the United States Constitution is violated, and the United States Courts must act. To require instead that the defendant first answer, appear or otherwise move in the federally-barred state court proceeding would require him to relinquish the very constitutional right he is attempting to protect. The Fifth Amendment protects against double jeopardy, not merely against double conviction or double sentencing. However, when the crimes are different, and the court cannot as a matter of law hold that the second prosecu-

tion is barred on its face, the court's decision depends not only on a judicial determination of what has been conclusively determined against the State in the prior trial, but also judicial speculation on what the State intends and has the ability to prove in the second trial; that inquiry should proceed in the state trial and appellate courts until the remedies there have been exhausted. Federal trial courts do not sit to render advisory opinions on the admissibility of evidence in pending state court trials.

If Count 3 of this indictment had contained only one allegation of misconduct in office, that of petitioner's alleged altering of documents, the preceding analysis would be dispositive of this petition.

However, petitioner claims that the first and third paragraphs of Count 3 allege, *in haec verba*, the very crimes of which he was acquitted in the first trial, and that therefore the mere moving of those two allegations again [7] violates the Double Jeopardy Clause of the United States Constitution.

The State contends that there is an important distinction between the solicitation and taking of money alleged in paragraphs (a) and (c) of Count 3, and the receipt of money alleged in Counts 1 and 2. The State contends that proof of the taking of the $100.00, as alleged in Counts 1 and 2, depended on the allegation that petitioner took the money for his own personal gain, while the identical solicitation and taking of the same $100.00, as alleged in paragraphs (a) and (c) of Count 3, turns on the allegation that petitioner collected the money for two policemen, not for his own benefit, and that in so acting for others he committed misconduct in office himself.

In support of each argument each side has analyzed the record of the prior testimony and the trial court's charge in an

---

7. The crimes charged in Counts 1 and 2 are bribery and the taking of an unlawful fee, which the petitioner claims are realleged in paragraphs (a) and (c) of Count 3.

attempt to demonstrate what was or was not conclusively determined at the first

8. Petitioner maintains that "at the second trial on the sole count of misconduct, *which essentially charges bribery and extortion,* the prosecutor is prohibited from once again introducing the similar evidence offered at the first trial." (PB: 15; emphasis added).

This Court has already noted, *supra* at 1067, that the "same evidence" test is not the measure of collateral estoppel effect here. The "same evidence" could, in an appropriate case, conceivably be introduced at the second trial for an entirely different purpose than that which it served at the earlier trial. It is true that "having failed to prove certain illegal acts once, [the State] cannot be permitted to prove them again simply by changing the name of the crime." McDonald v. Wainwright, 493 F.2d 204, 207 (5th Cir. 1974). This Court is of the view, however, that unless proof of the foreclosed crimes is necessary to conviction at the second trial, that trial must be permitted to go forward. The issue is not the introduction of the "same evidence;" it is, rather, whether it is absolutely necessary to conviction at the second trial that the jury find against petitioner on an issue upon which the first jury found in his favor. As the Supreme Court held in *Ashe, supra,* 397 U.S. at 446, 90 S. Ct. at 1195:

> Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the State could not present *the same or different* identification *evidence* in a second prosecution for the robbery of Knight in the hope that a different jury might find that evidence more convincing.

(Emphasis added)

Petitioner maintains that the allegation of misconduct in office, which the State seeks to retry, "essentially charges bribery and extortion," the crimes of which petitioner was found not guilty at the first trial. (PB: 15) To evaluate that contention this Court must look to "the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter." *Ashe, supra,* 397 U.S. at 444, 90 S.Ct. at 1194.

Three acts of misconduct in office were alleged in Count 3 of the indictment, and would presumably be reasserted at the second trial. They are, as noted earlier, the representation to Chasnoff that petitioner would obtain a favorable disposition of the charges against Cairns, the amendment of the Cairns summons by him, and his receipt of a $100 bill.

Chasnoff testified that, at petitioner's request, Chasnoff met with petitioner at the

trial, and therefore, what is and what is not now foreclosed.[8]

District Court Clerk's Office to discuss the Cairns case on November 5, 1971. (Tr. 10/3/72: 23) At that meeting, Chasnoff testified, petitioner "told me that he had been able to convince the officers to downgrade the case from A [driving while under the influence of alcohol] to B [driving while impaired]. He told me that I would have to bag them $50 apiece." (Tr. 10/3/72: 25–26) Chasnoff further testified that he and petitioner arranged that Chasnoff would give the officers $50 apiece so that they would not appear in court and the case would proceed as a "B" offense. (Tr. 10/3/72: 26) Chasnoff was to deliver the money to petitioner in an envelope, according to his testimony, and, pursuant to the instructions of investigators of the Hudson County Prosecutor's Office, Chasnoff did so on November 25, 1971. This date had been set for the Cairns hearing, and the passing of the money, during a recorded telephone conversation between Chasnoff and petitioner on November 15, 1971. (Tr. 10/3/72: 41–44; 57–64) At that meeting, according to Chasnoff, petitioner displayed his copy of the summons, marked as as a "B" summons. (Tr. 10/3/72: 57–58) Upon leaving petitioner's office, Chasnoff immediately informed investigators from the office of the Hudson County prosecutor of where petitioner had put the $100 bill (Tr. 10/3/72: 21), which had previously been marked. (Tr. 10/10/72: 21) Petitioner was placed under arrest, and the marked bill seized from the safe. (Tr. 10/10/72: 33–40) The testimony of Chasnoff, supported by other evidence and testimony introduced by the state, sets forth the essentials of petitioner's allegedly illegal conduct. Since the summations in the first trial were not transcribed (Tr. 10/18/72: 164), it remains for this Court only to analyze Judge Young's charge to the jury.

Judge John J. McCole of the Hudson County District Court, called as a defense witness, testified on cross-examination that the alteration of a traffic summons or discussion of the downgrading of an offense was not within the scope of petitioner's official duties. (Tr. 10/18/62: 66, 71)

The State argues that, despite the evidence of the receipt of money by petitioner, the jury could have acquitted him of Counts 1 and 2 simply because that money was not received in connection with his official duties. That may be so. However, the issue here is not what the jury may have decided, but rather what the jury *necessarily* decided in reaching verdicts of not guilty on Counts 1 and 2.

■ This Court need not decide the issue. Whether petitioner is right or wrong, whether the State is permitted. or forbidden to prove the allegations of paragraphs (a) and (c), it is beyond dispute that it may prove paragraph (b). (Tr. 1/21/75: 17–18) It may prove, without violence to the Constitution, that petitioner committed the crime of misconduct in office by altering court records. This Court therefore cannot hold that the mere moving of this indictment in state court is violative of petitioner's constitutional rights. Any objection which he may have to any particular evidence which may be offered at trial, whether that objection be based on federal or state law, may be presented to the state tribunal which is lawfully and properly in the process of adjudicating the case.

In the absence of a showing by petitioner in this Court that the Double Jeopardy Clause of the Constitution prohibits the state forum from even considering the issues at and after the state court trial, he must exhaust his state

In that regard, Judge Young's instructions to the jury on Counts 1 and 2 clearly negated the effect of this portion of Judge McCole's testimony and forbade the jury to do what the State now speculates it may have done:
> *Count 1:*
> Moreover, it is not necessary that the act requested be one which the official has the power to do. Sufficient it is if he has the official power, ability or apparent ability to bring about or contribute to the desired end.

(Tr. 10/19/72: 174)
> *Count 2:*
> "By color of office" is meant [sic] that the official position of the defendant *gave others the appearance of his having authority* to do or refrain from doing the act in question.

(Tr. 10/19/72: 175; emphasis added)
After careful review of Judge Young's charge to the jury on October 19, 1972 (Tr. 10/19/72: 165–195), this Court has concluded that the judge made "personal gain" an essential element of his instructions on Counts 1 and 2, but clearly and specifically excluded that element from his charge on Count 3.

*(1) Count 1*
In the course of his charge on Count 1, Judge Young made clear on several occasions his view that personal gain was an element of the offense charged. The Court told the jury: (emphasis added)
> (a) A police official is guilty of bribery when he receives any *undue reward* whatsoever in order to influence his behavior in office. . . .

(Tr. 10/19/72: 173)
> (b) The official should be concerned with doing only what is proper for the public welfare and not be subjected to undue influence by *offers of reward for personal gain.*

(Tr. 10/19/72: 174)
> (c) Such necessary criminal intent on the part of the defendant means an intent to use the opportunity to perform a public duty as a means of acquiring *an unlawful personal benefit or advantage.*

(Tr. 10/19/72: 174)
*(2) Count 2*
As to Count 2, the Court instructed the jury: (emphasis added)
> The second count of the indictment charges the defendant, Joseph A. Triano, with unlawful takings [sic], in violation of N.J.S. 2A:105–1, which provides in its pertinent part as follows:
> Any public officer who, by color of his office, receives or takes *any fee or reward,* not allowed by law, for performing his duty, is guilty.
> To sustain a violation of this statute it must be shown that ·the defendant was, one, an officer who, two, by color of his office, three, took money, four, that *was not due to him.*

(Tr. 10/19/72: 175)
> A person takes money not due to him in violation of this statute when he receives *a fee or reward* to which he is *not legally entitled* by reason of or in connection with his official duties.

(Tr. 10/19/72: 175–176)
This Court is satisfied that, taken together with the definition of "reward" given with regard to Count 1, Judge Young's charge on Count 2 effectively made "personal gain" an element of the unlawful taking charged.

*(3) Count 3*
As to Count 3, however, the Court expressly excluded the element of personal gain from the crime charged: (emphasis added)
> To prove criminal intent—that is, bad faith or evil motive or dishonesty, it is *not necessary* however for the state *to adduce proofs from which it could be inferred that the defendant intended to profit or otherwise benefit* from the acts alleged to have been done by the defendant or omitted by the defendant.

(Tr. 10/19/72: 179)

court remedies before seeking the Great Writ here.

Accordingly, the petition will be dismissed, without prejudice to petitioner's right, should he be convicted, to petition again upon exhaustion of state court remedies.[9]

Accordingly, it is on this 6th day of May, 1975,

Ordered, that the petition for a Writ of Habeas Corpus be, and it hereby is, dismissed, and that the Order of the Court dated January 23, 1975 be, and it hereby is, vacated.

9. As has been noted, this Court cannot make evidentiary rulings that will bind the state court at the new trial. However, the Court cannot but note Judge Thuring's ruling in his opinion of January 20, 1975, at 13–14:

Accordingly, at retrial the state will be permitted to present the full panoply of events charging misconduct in office under the Third Count including the right to introduce for substantive purposes evidence relative to the alleged taking of the bribe money.

Further, the court on its own motion under Evid.R. 4 directs that defendant at retrial be precluded from submitting to the new jury any reference to the prior jury's findings of "not guilty" on Counts One and Two. This, on the ground that introduction of such evidence for probative reasons is greatly outweighed by the real risk of engendering absolute confusion in the minds of the jury were they to attempt to probe the reasons for the first jury's verdict.

*Compare* McDonald v. Wainwright, 493 F.2d 204, 206, n. 2 (5th Cir. 1974).