**UNITED STATES of America,
Appellee,**

v.

**Nathaniel Presley DAVIS, Appellant.
No. 10580.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 7, 1966.

Decided Nov. 23, 1966.

Certiorari Denied Feb. 13, 1967.
See 87 S.Ct. 858.

Irvin B. Tucker, Jr., Raleigh, N. C., for appellant.

Larry G. Ford, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty., on brief), for appellee.

Before BELL, WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This is another minor episode in the continuing national effort to destroy the white (non-taxpaid) liquor business and prevent the manufacture of the sometimes dangerously toxic beverage. A general statute of prohibition might have sufficed to make the traffic in all of its aspects illegal, but the Congress has seen fit to break it down into its many component parts. The multiple offenses are defined with great specificity. Thus it is that one who spends a morning in an illicit distillery engaged in its business may find that he has committed not one, but as many as five or more separate offenses against the laws of the United States.

██ As to appellant Davis, the prosecutor chose to arm himself with five counts in a single bill of indictment—perhaps for the same reason that a man hunting birds will load his automatic shotgun with as many shells as the law allows. Such multiple prosecution is clearly lawful,[1] and Davis does not contend otherwise. Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947).

At the first trial, the jury acquitted Davis on four out of five counts and was unable to agree on the other one—resulting in a mistrial as to that count. Upon

---

1. It has been suggested that the fragmentation of a single course of conduct into a multiplicity of offenses derives from legislative concern for the protection of defendants, i. e., enabling them to know with specificity the proscribed activity, rather than any wish to aid prosecution. Mayers and Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L. Rev. 1, 29 (1960).

retrial on the unresolved single count, the defendant pleaded double (former) jeopardy and res judicata (collateral estoppel). He urgently insisted that his prior acquittal on four counts effectively barred further prosecution on the remaining count. The district judge rejected his contention, submitted the matter to the second jury, and the jury convicted Davis, from which conviction he has now appealed to this court.

■■ It is established beyond question that, absent unfair conduct on the part of the prosecuting attorney or the court, mistrial of a criminal case does not prevent subsequent retrial and conviction. That the Double Jeopardy Clause of the Fifth Amendment might have been more broadly interpreted to bar reprosecution after mistrial avails the defendant nothing, for it has not been. E.g., Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); Thompson v. United States, 155 U.S. 271, 15 S.Ct 73, 39 L.Ed. 146 (1894); United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).·

Unaided by the constitutional doctrine of double jeopardy, Davis insists that his second prosecution is barred by the judge-made doctrine of res judicata or collateral estoppel. The district court thought otherwise, and we agree.

■ In general, the doctrine of collateral estoppel "operates to conclude those matters in issue which the verdict determined though the offenses be different." Sealfon v. United States, 332 U.S. 575, 578, 68 S.Ct. 237, 239, 92 L.Ed. 180, 184 (1948). The principal difficulty in application of the definition is in ascertaining what has been "determined" at the first trial.

The extreme view of what has been "determined" has been stated as follows: that all matters alleged in an indictment or asserted by way of defense which *might* have been employed by the jury

in returning a verdict for the defendant are to be considered determined in his favor. No federal court has gone so far in shielding accused persons. Mayers and Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1, 34 (1960).

We see nothing to commend the adoption of such an extreme rule—especially in a situation such as this one where multiple offenses have been joined in one prosecution and there has not been seriatim harassment.

The usual rule, seldom articulated but generally applied by most courts, derives its strength from the "same evidence" test generally favored in double jeopardy cases and the general rule in civil cases. It is that the party seeking to foreclose reconsideration of an issue must show that it logically *must* have constituted the basis of the verdict. Restatement, Judgments § 68, comment K (1942); James, Civil Procedure § 11.20 (1965). Only those issues necessarily determined by the first jury are conclusive in the second trial.

Inevitably, in the application of such a rule to effectively bar subsequent prosecution, the courts have indulged in a presumption of rational determination by the first jury. This is not done because judges believe that jury verdicts are always rational,[2] but because to do otherwise would destroy the doctrine of collateral estoppel before it is born. This we are not free to do. Hoag v. State of New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958); Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948); United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916).

It is now necessary to examine the elements of each of the offenses enumerated in the five counts of the bill of

2. In Hoag v. State of New Jersey, it was said that "jury verdicts are sometimes inconsistent or irrational." 284 U.S. 464, 472, 78 S.Ct. 829, 835, 2 L.Ed.2d 913, 920 (1958). See also discussion by Mr. Justice Holmes in Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932).

indictment and the record of the trial to see what was "determined" by the first general verdicts of acquittal.

The bill of indictment was a five-count bill charging Davis and four other persons with the violation of five separate sections of Title 26 of the United States Code.

The first count charged them with having "in their possession and custody and under their control" a still and distilling apparatus for the production of distilled spirits set up without having the same registered as required by law in violation of Section 5179.

The second count, as to which there occurred a mistrial, charged simply that each of the five named persons worked at a distillery which was not posted with a sign as required by law in violation of Section 5180.

The third count charged the same persons with having made and fermented, and caused to be made and fermented, mash wort or wash, fit for distillation and for the production of distilled spirits at an illicit distillery in violation of Section 5601(a) (7).

The fourth count charged them with unlawfully possessing various devices and items of property, described in detail, intended for use in violating the liquor laws in violation of Section 5686(a).

The fifth count charged that they removed, deposited, and concealed, and were concerned in removing, depositing, and concealing, 586 gallons of non-tax-paid whiskey with intent to evade taxation on said whiskey in violation of Section 7206(4).

The same witnesses who testifed in respect to Davis at the original trial appeared when he was retried on the second count. Although the testimony varied in important respects,[3] we will assume for purposes of this appeal, as urged by appellant, that the evidence in respect to him at the first trial was substantially identical with that at the second.

Briefly stated, the evidence, on the foregoing assumption, tended to show that federal and state officers spied upon the distillery with the aid of a telescope and saw Davis engaged in the following activities: bending over and looking into a row of barrels containing whiskey, pouring meal or malt into the fermenter barrels, and pouring a foot tub full of whiskey into a liquor barrel.[4]

What do the general verdicts of acquittal entered on counts one, three, four, and five "determine"? Indulging, as we must, in the so-called presumption of rationality, without which Davis cannot prevail, we put to one side the distinct possibility that neither ultimate nor evidentiary facts were established by the verdicts.[5] The required premise is that something rational *must* be said to have been established by the general verdicts of acquittal.

Davis urges that acquittal on count one means simply that the jury was not satisfied of his identity and failed to find that he was present at the distillery. This is a perfectly rational and logical interpretation of the general verdict. But, it is equally rational and logical to conclude that the jury was satisfied Davis was present at the distillery but was dissatisfied that he had possession and custody and control of the still. As stated in

3. There was no testimony at the first trial that Davis was seen pouring a foot tub of whiskey into a liquor barrel. At the second trial, key government witness Smith testified he saw Davis "take a foot tub full of whiskey and pour it into the liquor barrel, which was under the shelter." Record, Transcript from Second Trial, p. 28. On cross-examination, counsel for Davis asked Smith why he had not stated at the first trial that he saw Davis pouring the whiskey into the liquor barrel. Smith answered that "it was an oversight on my part that I did not testify to that." Record, Transcript from Second Trial, p. 32.

4. See note 3, supra.

5. In Dunn v. United States, supra note 2, Mr. Justice Holmes noted that jury verdicts are sometimes the result of compromise, mistake, or levity.

*Bozza,* a case involving the identical fact situation:

"It might be possible that petitioner's helping to make the alcohol aided and abetted in its 'custody or possession.' But that would be a very strained inference under any circumstances. \* \* \* Yet there was no testimony that the petitioner ever exercised, or aided the exercise of, any control over the distillery. His participation in carrying the finished product by car does not fit the category of 'custody and possession' so nearly as it resembles the transportation of illegal liquor \* \* \*." Bozza v. United States, supra, 330 U.S. at 163, 67 S.Ct. at 647, 91 L.Ed. at 820. As in *Bozza,* there was no testimony that Davis exercised any control over the distillery.

Davis makes the same contention with respect to the acquittal on the third count and, indeed, on the fourth and fifth, i. e., that the only logical explanation of the acquittal and its meaning and the matter "determined" by the jury was that he was found not to have been present at the distillery. Such an explanation of the verdict does not rule out the equally rational interpretation that the jury simply determined that Davis had not made or fermented, or caused to be made and fermented, mash.[6]

As to the acquittal on the fourth count involving unlawful possession of property, the same considerations apply that were discussed with respect to acquittal on count one. None of the evidence at the first trial indicated that Davis so much as touched any of the numerous items of property set forth in the fourth count except perhaps for his having poured some meal into an empty barrel. Nor is meal described as such in the fourth count unless under the designation "100-pound bags of shipped stuff." Posses-

sion denotes control. Bozza v. United States, supra. A determination that Davis did not possess the enumerated items is entirely rational.

■■ Davis urges with vigor that no rational interpretation of acquittal on the fifth count can be made except that posited by him: that he was not the person officers observed at the illicit distillery but was elsewhere. This count charges him with having removed, deposited, and concealed 586 gallons of non-taxpaid whiskey. The only testimony showing actual physical contact of Davis with the non-taxpaid whiskey was that he picked up a foot tub of whiskey and poured it into a larger barrel.[7] In so doing, he certainly did not "conceal" it. See Hyche v. United States, 286 F.2d 248 (5th Cir. 1961). The word "remove" as used in this section "means more than 'transport,' and has reference to removing the liquor from the place where made and where the tax thereon was supposed to be paid \* \* \*." Price v. United States, 150 F.2d 283, 285 (5th Cir. 1945). Clearly Davis was not guilty of "removing" within the meaning of the statute.

■ This count charged the three elements (remove, deposit, conceal) in the conjunctive rather than the disjunctive. Even so, proof of any one of the prohibited acts is sufficient for conviction. Hyche v. United States, supra. But, since the elements were charged conjunctively, the jury could have rationally taken the United States Attorney at his word and considered all three prohibited acts together.[8] Since Davis was plainly not guilty of removing or concealing, the conjunctive language of the indictment may rationally account for acquittal of depositing. Moreover, although we think it unnecessary to decide, we are doubtful, considering the juxtapositioning of

---

6. The jury, like the author of this opinion, might have been in doubt as to whether putting meal or even malt into a barrel, empty or otherwise, would cause fermentation of mash (without proof of other steps in the process not disclosed by the evidence).

7. This testimony occurred in the second trial. See note 3, supra.

8. The court allowed the jury to take the indictment into the jury room.

the words remove and conceal with the word deposit, that merely pouring whiskey from one container into another not intended for removal from the still site would amount to depositing under the statute.[9] See Hyche v. United States, supra. Finally, it does not seem irrational to suppose that the jury may have doubted whether telescope vision was sufficient to disclose what sort of liquid was being poured. It might have been water, or mash, or beer, or, of course, whiskey.

Davis earnestly contends that the offering of substantially identical evidence at the second trial tended improperly to show him guilty of the four counts of which he had previously been acquitted. If we assume this to be true,[10] it does not necessarily follow that Davis was prejudiced. Only one well versed in the internal revenue laws would be aware of the fragmentation of a single course of conduct into multiple offenses. To offer evidence tending, although slightly, to show possession of tools and implements at the distillery in an effort to prove him guilty of working at the still does not put the accused in a worse light than one who works at a distillery without such tools. The danger presented in United States v. Kramer, 289 F.2d 909 (2d Cir. 1961), is not presented: a possible willingness of the second jury to convict one of conspiring with others to break and enter the United States Post Office because the jury may have believed him to have been the thief despite prior acquittal.

Finally, it is perhaps worth noting that most federal cases wherein an accused has been afforded the protection of the doctrine of collateral estoppel have involved seriatim prosecution,[11] rather than initial joinder of all offenses in one bill of indictment. Indeed, joinder of all offenses arising out of the same broad transaction (as was done here) has been thought a desirable solution, United States v. Dockery, 49 F.Supp. 907, 908 (E.D.N.Y.1943), and is approved in Model Penal Code Section 1.07(2). Where there has been initial joinder of all offenses and no attempt to obtain successive bites at the cherry, the need to invoke the remedy afforded by the doctrine of collateral estoppel, if it exists at all, is certainly less compelling.

■ The presumption of rationality does not compel the conclusion that the jury in the initial trial determined that Davis was not identified as being present at the distillery. Its verdict can be rationally viewed as determining, in respect to the second count, disagreement on whether or not Davis was working at the distillery while allowing Davis the benefit of a reasonable doubt as to his (1) control of the still, (2) causing fermentation of the mash, (3) having possession of property used at the distillery, and (4) removing, depositing, or concealing the whiskey. We think this construction of the general verdicts of acquittal is supported by the record and by the detailed instructions of the trial judge, who carefully spelled out the vary-

9. If the tub had no stamps affixed denoting quantity of distilled spirits or evidencing payment of all internal revenue taxes imposed on such spirits—and it seems doubtful it did have—Davis would clearly have been guilty of another offense with which he was not charged. See 26 U.S.C.A. § 5604(a) (1). By analogy to what was said in Bozza, Davis' participation more nearly resembles unlawful possession of whiskey than removing or depositing or concealing. See Bozza v. United States, supra, 330 U.S. at 164, 67 S.Ct. at 647, 91 L.Ed. at 820.

10. It has been demonstrated supra that this is, at most, only partially true. For example, the evidence fails to make out a prima facie case of removing or concealing, and is not compelling on the other counts.

11. But see Cosgrove v. United States, 224 F.2d 146 (9th Cir. 1954), wherein subsequent prosecution of six counts of an eight-count indictment was held barred by prior acquittal of two conspiracy counts contained in it.

ing elements in each offense specified in the bill.

Affirmed.[12]

J. SPENCER BELL, Circuit Judge (dissenting).

The appellant Davis and co-defendants were charged in a five-count indictment with operating an illicit still. All of the offenses were alleged to have taken place on the same day, and all defendants were charged in each count. The first count charged the defendants with having custody and control of the apparatus, the second with having worked at the still, the third with having made or caused to be made mash fit for distillation, the fourth with unlawful possession, and the fifth with having removed, deposited or concealed whiskey. At the first trial, the jury found Davis not guilty as to counts one, three, four and five, but failed to agree on a verdict as to count two—working at an unregistered still. A mistrial was declared as to this count, and Davis was subsequently retried, convicted and sentenced on this same count. The entire evidence of the Government against Davis at both trials[1] consisted of the testimony of five agents who observed the still in operation on the afternoon of September 1, 1964, over a period of about a half hour before raiding it. Their observations were made through a telescope located in the woods about 50 yards away. They testified that they saw Davis, whom they recognized from previous acquaintance, pour malt or meal into the fermenter barrels and pour whiskey from a foot tub into a liquor barrel located under a shed at the still site.[2] He was not captured at the still,

as were his co-defendants. Davis offered only alibi evidence. The burden of his defense was that he was not at the still and that the agents were mistaken in their identification of him.

I think Davis was correct in his contention that the principle of collateral estoppel operated to bar the introduction of the Government's evidence at the second trial. Collateral estoppel operates, following a final judgment, to establish conclusively a matter of fact or law for the purposes of a later law suit on a different cause of action between the parties to the original action in which the matter was determined. It is fully applicable in criminal cases. Sealfon v. United States, 332 U.S. 575, 578, 68 S.Ct. 237, 92 L.Ed. 180 (1948); United States v. Oppenheimer, 242 U.S. 85, 87, 37 S.Ct. 68, 61 L.Ed. 161 (1916). I do not think the jury's inability to agree on the second count in the first trial has any relevance whatsoever to the application of the doctrine at the second trial, because in its verdict on the other counts it found the real fact at issue—Davis's presence at the still—in favor of Davis. It is true, of course, that if the jury, in the first trial, instead of disagreeing, had convicted Davis on the second count while acquitting him on the others, the court could have accepted these inconsistent verdicts though they could not be rationalized. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). This, however, does not justify the Government, as it now contends, in putting the defendant to a second trial on the identical evidence even for a crime different from those set forth in the four counts for which he was acquitted. This is true if that crime arises out of the

---

12. We note our displeasure with appellant's failure to comply with the requirement of Rule 10 of our rules that the charge of the district court judge be printed in the appendix. Despite the failure and resulting inconvenience to the court, in our discretion, we have not dismissed but have considered the matter on the merits.

1. The brief for the Government concedes: "At the second trial the Government placed the identical witnesses used in the first trial on the stand and their testimony was substantially the same as that given by the same witnesses in the first trial." Appellee's Brief, p. 3.

2. At the first trial, Davis was seen "bending over" or "looking into" the whiskey barrel; at the second trial this became pouring whiskey into it.

same conduct and it is apparent from an examination of the entire record in the first trial that the jury, in its acquittal of Davis on the other four counts, found for him on the facts which the Government must prove in the second trial in order to convict. Sealfon v. United States, supra. See Yawn v. United States, 244 F.2d 235 (5 Cir. 1957); United States v. Simon, 225 F.2d 260 (3 Cir. 1955); United States v. De Angelo, 138 F.2d 466 (3 Cir. 1954).

Notwithstanding the majority's meticulous analysis of the separate elements of the several crimes involved in making illicit whiskey, the one real issue before the jury was clearly and simply a question of identification. While it is true that the testimony of the five government agents regarding what they observed at the still varied in minor particulars from the first to the second trial, the Government's entire case against Davis in both trials consisted of the agents' observations through a telescope on a single occasion. The majority opinion asserts that the jury reasonably may have been convinced of the agents' identification of Davis since the four counts of which he was acquitted required a finding of something more than mere presence. The majority opinion fails to point out that presence alone was enough to convict the defendant on two of the four counts of which he was acquitted, and the district court carefully instructed the jury to that effect.[3] Although there is a remote possibility, of course, that the jury may have believed that Davis was present but not guilty of any of the four counts of which they acquitted him, it is highly improbable in view of the instruction as to the statutory presumptions created by presence. It is almost always possible in a criminal case to hypothesize alternative bases for a jury verdict, and to do so in the meticulous manner of the majority opinion rather than to look at the evidence as a whole is to vitiate, to a great degree, the doctrine of collateral estoppel as applied to criminal cases.

Since collateral estoppel applies only where the second case is based on a different cause of action in a civil suit or on a different criminal offense in a criminal action, the question of what facts in issue in the second trial were actually determined in the first is often a difficult one. In making its determination, the majority has applied the test generally applied in civil cases and for which the majority cites only civil authority (Restatement, Judgments § 68, comment K (1942), and James, Civil Procedure § 11.20 (1965)): "that the party seeking to foreclose reconsideration of an issue must show that it logically *must* have constituted the basis of the verdict." In my view, the very different natures of civil and criminal litigation preclude the use of the same test in determining what facts have been previously determined for purposes of collateral estoppel. In a civil action the court must be extremely cautious in making this determination because an error in favor of the party seeking application of collateral estoppel could conceivably amount to a violation of the other party's right not to be deprived of his property without due process. This factor is greatly diminished when the party against whom the doctrine is applied is not a private litigant, but the prosecution in a criminal case. In a criminal case the liberty of the defendant is at stake, not merely his rights and liabilities in a civil matter, and the predominating policy for applying collateral estoppel is the policy of the Double Jeopardy Clause of the Fifth Amendment— to prevent harassment of the defendant and his being subjected to a second trial.

It seems to me, therefore, that in a criminal case the correct test to be applied in determining what issues have been previously found for the defendant is the test used by the Second Circuit in United States v. Kramer, 289 F.2d 909 (2 Cir. 1961). In that case the defend-

---

3. The court charged the jury that under the statutory presumptions of 26 U.S.C. § 5601(b) (1) and (3) (1964), they could find the defendant guilty of counts one and three if they found that he was present at the still.

ant was first tried on charges of the substantive offense of burglary and acquitted. He was then charged with conspiracy to commit the same burglaries. Although the court pointed out that the elements of the crimes of conspiracy and burglary are different and therefore require different proof, it held, using the words of the Supreme Court in Sealfon v. United States, supra, that "the core of the prosecutor's case was in each case the same."

It seems to me beyond quibble that the "core" of the Government's case in both trials of Davis was the question of whether Davis was present at the still and that the jury in acquitting Davis on four of the five counts in the first trial decided that issue in the defendant's favor. That trial was a full and fair hearing and a definitive adjudication of the matter. It is reason enough to apply collateral estoppel that courts must make an end to litigation but

> "More important, to permit the Government to force a defendant who has won an acquittal to relitigate the identical question on a further charge arising out of the same course of conduct, selected by the Government from the extensive catalogue of crimes furnished it in the Criminal Code, would permit the very abuses that led English judges to develop the rule against double jeopardy long before it was enshrined in the Fifth Amendment, 3 Holdsworth, History of English Law, 614,—and still longer before the proliferation of statutory offenses deprived it of so much of its effect. See Mr. Justice Brennan's separate opinion in Abbate v. United States, 1959, 359 U.S. 187, 196, 201, 79 S.Ct. 666, 3 L.Ed.2d 729. The very nub of collateral estoppel is to extend *res judicata* beyond those cases where the prior judgment is a complete bar. The Government is free, within the limits set by the Fifth Amendment, see United States v. Sabella, 2 Cir., 1959, 272 F.2d 206, 211, to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; but it may

not prove the new charge by asserting facts necessarily determined against it on the first trial, no matter how unreasonable the Government may consider that determination to be." Judge Friendly writing for the court in United States v. Kramer, 289 F.2d 909, 916 (2 Cir. 1961). [Footnote omitted.]

I would reverse the conviction.