## HERMAN ROOSEVELT POWERS *v.* STATE OF MARYLAND

[No. 99, September Term, 1978.]

*Decided June 1, 1979.*

270

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE and DAVIDSON, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Richard Berger, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case presents two questions. The first is whether the doctrine of collateral estoppel applies after a jury at a single trial acquits on one count of a multicount indictment [1] and is unable to agree upon a verdict on a related count of the same indictment involving a common issue of ultimate fact, which if found in favor of an accused would establish his innocence on both counts. The second is whether, under the present circumstances, that doctrine, if it applies, precludes the accused from being tried a second time on the related count.

On 24 August 1977 at about 2:00 p.m., Sea Man Kim, Chond Ham Kim, and Sung Ryum Kim were working in a food market on Carrollton Avenue. Three men, one of whom wore glasses, entered. One of the men drew a gun and ordered the Kims to lie down on the floor. Glen Wallace, a 14-year-old boy, entered the store and was also ordered to lie down. Thereafter, one of the men remained standing near the door while the other two removed about $16 from the cash register, a set of keys and about $18 from Chond Ham Kim's pockets, and about $200 from Sea Man Kim's pockets, for a total amount of about $234. They also searched Sung Ryum Kim's pockets but found nothing. After one of the robbers said, "Don't move," the three robbers left.

An alarm was sounded at the store which brought a number of policemen into the area. A woman, Sandra Banks, who was leaning out of a window at a nearby apartment house at 715 Carrollton Avenue, waved to them and pointed to the rear of 717 Carrollton Avenue, where the ladder of a fire escape had been lowered to the ground. The policemen climbed the fire escape to the third floor where through a window they saw

---

1. For purposes of this opinion, we treat separate indictments consolidated for trial as the equivalent of a multicount indictment.

two men, Fred Barksdale and Norman Turner, coming out of apartment B-6. Barksdale and Turner were arrested.

The policemen then entered apartment B-6, where they found Edward Wells and Warren McLeod, whom they also arrested. The policemen searched apartment B-6 and found Chond Ham Kim's keys in a canister full of flour, $71 in a glass one-third full of milk, $15.79 in a pot, and $72 in a pair of black pants, for a total of about $158.79. In addition, they found a gun in a pot under the kitchen sink.

While Barksdale, Turner, McLeod, and Wells were being apprehended and arrested, another policeman, who was inside the building, saw Herman Roosevelt Powers, the appellant, come down a flight of steps to the first floor. He was wearing glasses, blue jeans and a blue jacket. Sea Man Kim, who with Sung Ryum Kim had followed the robbers, saw Powers and spoke to him in an agitated manner. Thereafter, Powers was arrested. When the policeman later searched Powers, they found $202 in his pocket. Of the five men arrested, only Powers wore glasses.

On 22 September 1977, a grand jury returned indictments charging Powers with the robbery of Chond Ham Kim, the attempted robbery of Sung Ryum Kim, and the robbery of Sea Man Kim.[2] Insofar as here relevant, Indictment No. 57726524 charged Powers with robbery with a deadly and dangerous weapon of Chond Ham Kim; Indictment No. 57726529 charged Powers with attempted robbery with a deadly and dangerous weapon of Sung Ryum Kim; and Indictment No. 57726534 charged Powers with robbery with a deadly and dangerous weapon of Sea Man Kim. In the Criminal Court of Baltimore, Powers was tried by a jury presided over by Judge Milton B. Allen.[3]

At trial the State presented unassailable proof that an armed robbery had been committed and that personal property had been taken from Chond Ham Kim and Sea Man

2. Barksdale, Turner, McLeod, and Wells were similarly indicted.

3. In that proceeding, McLeod and Wells were tried as Powers's codefendants. Barksdale and Turner were never tried. Their indictments were nol prossed on the day that Powers's trial concluded.

Kim. The State called the four eyewitnesses to the crime, Chond Ham Kim, Sea Man Kim, Sung Ryum Kim, and Glen Wallace, to testify on these issues. Their testimony in this respect was consistent both internally and with one another, and was otherwise uncontradicted.

On the other hand, the State's proof that Powers had been one of the robbers was not as strong. One of the eyewitnesses, Chond Ham Kim, testified that there had been three robbers but did not identify Powers or either of his codefendants. The remaining three eyewitnesses identified Powers as one of the robbers. They each stated that at the time of the robbery the robber had been wearing jeans, a blue or black jacket and glasses. This description of the robber's identifying characteristics at the time of the robbery was so lacking in detail and was so generalized that it could have fit any number of men. None of these eyewitnesses was able to describe or identify either of the other two robbers. Finally, the testimony of these three eyewitnesses was in certain respects inconsistent both internally and with one another.

The only other evidence tending to identify Powers as one of the robbers was the testimony of Sandra Banks who said that she had seen four or five men, one of whom was wearing a dark jacket and glasses, running up the fire escape of 717 Carrollton Avenue. This evidence was contradicted by the testimony of two State's witnesses who said Ms. Banks had told them she had not seen and could not describe any of the people running up the fire escape.

Powers did not testify. In closing argument, the State's Attorney said: "[T]he only matter I believe that you will have to consider will be the agency or the identification [of the robbers]." He pointed out that Powers had been identified by four eyewitnesses and that this evidence, combined with the additional circumstantial evidence, showed beyond a reasonable doubt that Powers had been one of the robbers.

Defense counsel agreed that the only issue was identification. He pointed out that although there had been only three robbers, five persons were arrested. He argued that the only reason Powers had been identified as one of the robbers was because he had been the only one arrested who

wore glasses. He asserted that the direct evidence presented by the three identifying eyewitnesses, based on their observations at the time of the commission of the crime, did not show beyond a reasonable doubt that Powers had been one of the robbers because it was too generalized and contained certain inconsistencies. He pointed out that each of the identifying eyewitnesses noted that at the time of the robbery one of the robbers had been wearing glasses. He stated that at or shortly after the time that the policemen had arrested the five men, both Sea Man Kim and Sung Ryum Kim had seen that Powers was the only one of the five arrested who was wearing glasses. He concluded that at trial they both identified Powers as the robber, solely because of their previous observations at the time of the robbery and at the time of the arrest. He argued that this conclusion was supported by the fact that Chond Ham Kim, who had not noted that one of the robbers was wearing glasses at the time of the robbery and had not seen Powers at the time of the arrest, could not identify him at trial.

With respect to the circumstantial evidence, defense counsel maintained that the only evidence linking Powers to his alleged accomplices or to the apartment in which the incriminating evidence was recovered was Ms. Banks's testimony that one of the four or five men on the fire escape had been wearing glasses. He pointed out that her testimony was contradicted by two State's witnesses. He asserted that there was no identifying evidence to prove that the gun found in the apartment was the weapon used in the commission of the crime, or that the money found in Powers's pocket was the money stolen at the market, and that in any event, the total amount of money found in the apartment and in Powers's pocket exceeded the total amount stolen. He concluded that the direct eyewitness testimony, even when bolstered by the circumstantial evidence, was insufficient to show beyond a reasonable doubt that Powers had been one of the robbers. In sum, defense counsel said:

> "This case for the State hangs on a pair of glasses. That's the basis for the identification. . . . Nothing, nothing in front of you and yet the State has the

burden to prove its case beyond a reasonable doubt. What is proven is that a robber had glasses, that a man there arrested had glasses. Remember they arrested five people."

The trial court instructed the jury, among other things, that if Powers had participated in the armed robbery, he would have been guilty of robbing each of the three victims. It said:

"A person who aids or abets the principal. Defendant may be guilty of the principal offense even though he did not personally commit each of the acts constituting the offense and was not personally present at its commission."

Thereafter, it submitted the case to the jury.

The jury found Powers not guilty under Indictment No. 57726524, which alleged the robbery of Chond Ham Kim, and not guilty under Indictment No. 57726529, which alleged the attempted robbery of Sung Ryum Kim. The jury was unable to agree upon a verdict in Indictment No. 57726534, which alleged the robbery of Sea Man Kim. Accordingly, the trial court declared a mistrial on that indictment.[4] Thus, in a single trial, the same jury which determined by its verdicts of acquittal on two counts of a multicount indictment that Powers had not been the person who had robbed two victims of a robbery was unable to determine a common issue of ultimate fact essential to conviction on a related count — whether Powers had been the person who had robbed the third victim of that robbery.

Powers filed a "Motion to Dismiss Indictment [No. 57726534] Based on Double Jeopardy, Collateral Estoppel, and Res Judicata." After a hearing, the trial court dismissed the motion. Powers appealed to the Court of Special Appeals. We issued a writ of certiorari before consideration by that Court.

---

4. The trial court acquitted codefendant McLeod on all counts of all of the indictments against him on the ground that the evidence was insufficient to sustain a conviction. The jury found codefendant Wells guilty of receiving goods stolen from Chond Ham Kim, and not guilty on all of the other counts of the indictments against him.

The Fifth Amendment to the United States Constitution provides a guarantee against double jeopardy. *Cf. Cousins v. State,* 277 Md. 383, 388, 354 A. 2d 825, 828, *cert. denied,* 429 U. S. 1027, 97 S. Ct. 652 (1976); *State v. Barger,* 242 Md. 616, 619, 220 A. 2d 304, 306 (1966); *State v. Shields,* 49 Md. 301, 303-04 (1878); *Hoffman v. State,* 20 Md. 425, 432-34 (1863) (common law doctrine of double jeopardy in Maryland). This amendment establishes that no person shall be put in jeopardy twice for the same offense.

In *United States v. Oppenheimer,* 242 U. S. 85, 37 S. Ct. 68 (1916), the United States Supreme Court held that the common law doctrine of *res judicata* applies in federal criminal proceedings. This case established that once a person has been acquitted, the federal government cannot prosecute him a second time for the same offense.

In *Sealfon v. United States,* 332 U. S. 575, 68 S. Ct. 237 (1948), the Supreme Court held that the common law doctrine of collateral estoppel applies in federal criminal proceedings. There, an accused was separately indicted for conspiracy to defraud the United States and for commission of the substantive offense. In an initial jury trial, the accused was tried and acquitted on the conspiracy charge. Subsequently, in a second jury trial, he was tried and convicted of the substantive offense. The Supreme Court was required to determine the legal effect of inconsistent verdicts which occur because a jury in an initial trial acquits an accused of an offense and another jury in a second trial convicts him of a related offense having a common issue of ultimate fact essential to conviction, which the previous acquittal had determined in his favor.

In *Dunn v. United States,* 284 U. S. 390, 52 S. Ct. 189 (1932), the Supreme Court previously had considered the legal effect of inconsistent verdicts which occur when, in a single trial, the same jury acquits an accused on one count of a multicount indictment and simultaneously convicts him on a related count of the same indictment involving a common issue of ultimate fact, which if found in his favor would establish his innocence on both counts. It had held that under such circumstances the inconsistent verdicts could stand. *Accord,*

*Ford v. State,* 274 Md. 546, 552-53, 337 A. 2d 81, 86 (1975); *Ledbetter v. State,* 224 Md. 271, 273, 167 A. 2d 596, 597 (1961); *Leet v. State,* 203 Md. 285, 294, 100 A. 2d 789, 793-94 (1953). In *Sealfon,* however, the Supreme Court concluded that inconsistent verdicts, when reached in successive trials, could not stand. It recognized that the first jury's verdict of acquittal determined an ultimate fact in favor of the accused while the second jury's verdict of conviction subsequently determined the same ultimate fact against the accused. It concluded that because the first jury's verdict of acquittal was a "determination favorable to [the accused] of the facts essential to conviction," the second jury's subsequent inconsistent verdict of conviction must fall. This case established not only that inconsistent verdicts, when reached in successive trials, are not permissible, but also that once a person has been acquitted, the federal government cannot prosecute him a second time for a related offense having a common issue of ultimate fact essential to conviction, which the previous acquittal had determined in his favor.

In *Benton v. Maryland,* 395 U. S. 784, 89 S. Ct. 2056 (1969), the Supreme Court held that the Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment. In *Ashe v. Swenson,* 397 U. S. 436, 90 S. Ct. 1189 (1970), that Court considered whether the doctrine of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy. There, three or four armed men broke into a basement where six other men were playing poker and robbed each of them of money and personal property. Ashe was charged on a single count information and tried in a Missouri State court for robbing Donald Knight, one of the poker players. The only issue in the case was whether Ashe had been one of the robbers. After considering all of the evidence produced by the State, a jury found him "not guilty due to insufficient evidence."

Six weeks later Ashe was brought to trial again, this time for the robbery of another poker player, a man named Roberts. He filed a motion to dismiss asserting that because of his previous acquittal, a second trial would impermissibly

subject him to double jeopardy. The motion was overruled. He was tried and the jury found him guilty. On appeal, the Supreme Court of Missouri denied his "plea of former jeopardy" and affirmed the conviction. *State v. Ashe,* 350 S.W.2d 768 (Mo. 1961), *rev'd sub nom, Ashe v. Swenson,* 397 U. S. 436, 90 S. Ct. 1189 (1970). The United States Supreme Court reversed. It held that the doctrine of collateral estoppel is embodied in the Fifth Amendment. 397 U. S. at 446, 90 S. Ct. at 1195. With respect to that doctrine, it said:

> " 'Collateral estoppel' . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.
>
> . . .
>
> "The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' . . . Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." 397 U. S. at 443-45, 90 S. Ct. at 1194 (citation and footnotes omitted).

It decided that after a jury had determined by its verdict of acquittal that Ashe had not been one of the robbers, the State

could not prosecute him for the robbery of another victim of that same crime. This case established that once a person has been acquitted, a state cannot prosecute him a second time for a related offense having a common issue of ultimate fact essential to conviction, which the previous acquittal had determined in his favor. *Accord, Cousins v. State,* 277 Md. at 398, 354 A. 2d at 834; *State v. Coblentz,* 169 Md. 159, 164-66, 180 A. 266, 268-69 (1935); *Bell v. State,* 57 Md. 108, 118-19 (1881). *See Hinton v. State,* 36 Md. App. 52, 57-58, 373 A. 2d 39, 42 (1977).

Thereafter, in three cases, the Supreme Court considered whether the doctrine of collateral estoppel applies under varying circumstances in which the validity of a jury's findings of fact in favor of an accused is questionable. In *Simpson v. Florida,* 403 U. S. 384, 91 S. Ct. 1801 (1971) (per curiam), the Supreme Court considered whether the doctrine of collateral estoppel applies after a jury acquits an accused whose previous conviction for the same offense had been reversed. There, in 1966, two armed men entered a store and robbed the manager and a customer. In 1967, Simpson was tried and convicted by a jury of the armed robbery of the manager. That same year his conviction was reversed on appeal because the trial judge had neglected to instruct the jury on the lesser included offense of larceny. Thereafter, in July 1968, Simpson was retried on the same charge and acquitted by a jury. Subsequently, he was charged with robbing the customer. His motion to quash the information on double jeopardy grounds was overruled. A jury found him guilty of the armed robbery of the customer. On appeal, the District Court of Appeal of Florida affirmed. *Simpson v. State,* 237 So. 2d 341, *cert. denied,* 240 So. 2d 645 (Fla. 1970), *vacated,* 403 U. S. 384, 91 S. Ct. 1801 (1971).

The United States Supreme Court vacated and remanded. It decided that if a jury by its verdict of acquittal had determined that Simpson was not a robber of the manager, the State could not prosecute him for the robbery of the customer, notwithstanding the fact that a different jury at an earlier trial had determined by its verdict of conviction that he was a robber of the manager. This case established that

collateral estoppel applies not only where there is no reason to question the validity of a jury's findings of fact in favor of an accused, but also where the validity of those findings is questionable because a different jury at an earlier trial had resolved the same questions of fact against the accused.

In *Harris v. Washington,* 404 U. S. 55, 92 S. Ct. 183 (1971) (per curiam), the Supreme Court considered whether the doctrine of collateral estoppel applies when a jury which acquits an accused was precluded, solely on the ground of privilege, from considering otherwise relevant, material, and competent evidence. There the State of Washington in a single count information charged that Harris mailed a bomb which exploded in the home of Ralph Burdick, killing Burdick and Harris's infant son and injuring Harris's estranged wife. Harris was charged and tried solely for the murder of Burdick. At trial the only issue was whether Harris had mailed the bomb. The State presented a typewritten letter, allegedly written by Harris, which threatened the lives of Burdick and Mrs. Harris. The trial court, however, would not admit the letter into evidence, ruling that to do so, under the circumstances there present, would violate Harris's privilege of confidential marital communications. The jury acquitted Harris.

Immediately thereafter, the State charged Harris with the murder of his son and the assault upon his wife. At a trial on these charges the previously excluded threatening letter would have been clearly admissible because, under State law, the defense of privilege would not have been available. Harris filed a motion to dismiss, asserting the defenses of double jeopardy and collateral estoppel. The trial court overruled the motion. The Court of Appeals of Washington reversed, but the Supreme Court of Washington affirmed the trial court. *State v. Harris,* 2 Wash. App. 272, 469 P. 2d 937 (1970), *rev'd,* 78 Wash. 2d 894, 480 P. 2d 484, *rev'd,* 404 U. S. 55, 92 S. Ct. 183 (1971).

The United States Supreme Court reversed. It noted that *"Ashe v. Swenson* squarely controls this case," and said that collateral estoppel "applies irrespective of whether the jury considered all relevant evidence and irrespective of the good

faith of the State in bringing successive prosecutions." 404 U. S. at 56-57, 92 S. Ct. at 184. This case established that collateral estoppel applies, not only where there is no reason to question the validity of a jury's findings of fact, but also where the validity of the jury's findings is questionable because it was not permitted to consider all of the relevant evidence.

In *Turner v. Arkansas,* 407 U. S. 366, 92 S. Ct. 2096 (1972) (per curiam), the Supreme Court considered whether the doctrine of collateral estoppel applies when state law prohibits the prosecution from joining in a multicount indictment all of its charges and proceeding against an accused in a single trial. There, Turner, Larry Yates, and another person were playing poker late at night. After Yates left the game he was robbed and murdered. Turner was charged with the murder. A jury acquitted him. Thereafter, he was indicted for the robbery of Yates.

Turner filed motions to dismiss the indictment on double jeopardy and *res judicata* grounds which the trial court denied. The Arkansas Supreme Court reasoned that because State statutes prevented charges of murder and robbery from being joined in one indictment, the question whether the accused was guilty of robbery could not have been adjudicated in the first case, and affirmed. *Turner v. State,* 248 Ark. 367, 372, 452 S.W.2d 317, 320 (1970); *Turner v. State,* 251 Ark. 499, 473 S.W.2d 904 (1971), *rev'd,* 407 U. S. 366, 92 S. Ct. 2096 (1972).

The United States Supreme Court reversed. It noted that "[t]his case is . . . squarely controlled by *Ashe v. Swenson,*" and said that "the rejection of petitioner's claim by the Arkansas Supreme Court on procedural grounds does not foreclose our inquiry on this issue." 407 U. S. at 368-70, 92 S. Ct. at 2098-99. It decided that after a jury had determined that Turner was not present at the scene of the robbery and murder of Yates, the State could not prosecute him for the robbery of Yates. This case established that the doctrine of collateral estoppel applies even when a state is precluded by law from joining all of its charges in a multicount indictment and proceeding against the accused in a single trial.

The Supreme Court has not considered the precise problem presented here. The cases involving the application of the doctrine of collateral estoppel previously decided by that Court all involved single count indictments in which the jury initially acquitted and the accused was subsequently tried for a related offense having a common issue of ultimate fact essential to conviction, which the previous acquittal had determined in his favor. In each of those cases, the jury's general verdict of acquittal was considered sufficiently certain to constitute a valid determination of fact. In those cases, the doctrine of collateral estoppel was applied to prevent inconsistent verdicts in successive trials.

Here, in a single trial, a jury determined by its verdicts of acquittal on two counts of a multicount indictment that an accused had not been the person who had robbed two victims of a robbery. In the same trial, the same jury, however, was unable to determine whether the accused had been the person who had robbed the third victim of that robbery. Because the jury's findings of ultimate facts common to all three counts appear to be inconsistent, the validity of those findings is questionable. We must, therefore, determine whether, despite the jury's apparently inconsistent findings on the common issues of ultimate fact essential to conviction, the doctrine of collateral estoppel applies.

In deciding this question, we rely heavily on the policies underlying the cognate doctrines of double jeopardy, *res judicata,* and collateral estoppel. In describing the purpose of the doctrine of double jeopardy, Justice Black, in *Green v. United States,* 355 U. S. 184, 78 S. Ct. 221 (1957), said for the majority:

> "[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

"In accordance with this philosophy it has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and even when 'not followed by any judgment, is a bar to a subsequent prosecution for the same offense.' . . . Thus it is one of the elemental principles of our criminal law that the Government cannot secure a new trial by means of an appeal *even though an acquittal may appear to be erroneous."* 355 U. S. at 187-88, 78 S. Ct. at 223-24 (citation omitted) (emphasis added).

In describing the purpose of the doctrine of collateral estoppel as it applies in criminal law, Judge Friendly, in *United States v. Kramer,* 289 F. 2d 909 (2d Cir. 1961), said for the majority:

"[T]o permit the Government to force a defendant who has won an acquittal to relitigate the identical question on a further charge arising out of the same course of conduct, selected by the Government from the extensive catalogue of crimes furnished it in the Criminal Code, would permit the very abuses that led English judges to develop the rule against double jeopardy long before it was enshrined in the Fifth Amendment ... and still longer before the proliferation of statutory offenses deprived it of so much of its effect. . . . The very nub of collateral estoppel is to extend *res judicata* beyond those cases where the prior judgment is a complete bar. The Government is free, within the limits set by the Fifth Amendment, ... to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; but it may not prove the new charge by asserting facts necessarily determined against it on the first trial, *no matter how unreasonable the Government may consider that determination to be."* 289 F. 2d at 916 (citations and footnote omitted) (emphasis added).

Thus, the primary purpose of the doctrine of collateral estoppel is to protect an accused from the unfairness of being

required to relitigate an issue which has once been determined in his favor by a verdict of acquittal.

Many of those courts which have considered questions similar to that now presented have applied the doctrine of collateral estoppel. *United States* ex rel. *Rogers v. La Vallee,* 517 F. 2d 1330, 1334 (2d Cir. 1975), *cert. denied,* 423 U. S. 1078, 96 S. Ct. 866 (1976); *Cosgrove v. United States,* 224 F. 2d 146, 150 (9th Cir. 1954). *See United States v. Davis,* 369 F. 2d 775, 777 (4th Cir. 1966), *cert. denied,* 386 U. S. 909, 87 S. Ct. 858 (1967); *United States v. Kenny,* 236 F. 2d 128, 130 (3d Cir.), *cert. denied,* 352 U. S. 894, 77 S. Ct. 133 (1956); *United States* ex rel. *Triano v. Superior Court of New Jersey,* 393 F. Supp. 1061, 1067 (D. N.J.), *aff'd,* 523 F. 2d 1052 (3d Cir. 1975), *cert. denied,* 423 U. S. 1056, 96 S. Ct. 787 (1976); *United States v. Flowers,* 255 F. Supp. 485, 487-89 (E.D. N.C. 1966); *United States v. Perrone,* 161 F. Supp. 252, 257-59 (S.D. N.Y. 1958); *United States v. Smith,* 337 A. 2d 499, 503-04 (D.C. 1975) (Kern, J., concurring); *People v. Chang,* 382 N.Y.S.2d 611, 614, 86 Misc.2d 272, 275 (1976). *Cf. United States v. Venable,* 585 F. 2d 71, 75-77 (3d Cir. 1978); *United States v. Nelson,* 574 F. 2d 277, 283 (5th Cir. 1978); *Travers v. United States,* 335 F. 2d 698, 703 (D.C. Cir. 1964); *People v. Pearson,* 16 Ill.App.3d 543, 549, 306 N.E.2d 539, 543 (1973) (in a single trial on a multicount indictment accused acquitted and convicted and conviction subsequently reversed). Other courts, however, have held that the doctrine of collateral estoppel is inapplicable when a jury acquits on one count of a·multicount indictment and is unable to agree on another count having a common issue of ultimate fact, which if found in favor of an accused would establish his innocence on both counts. *United States v. McGowan,* 385 F. Supp. 956, 961 (D. N.J. 1974); *United States v. Smith,* 337 A. 2d 499, 501-03 (D.C. 1975); *State v. Roller,* 29 N.J. 339, 350, 149 A. 2d 238, 243-44 (1959); *State v. Esposito,* 148 N.J.Super. 102, 105-08, 371 A. 2d 1273, 1275-76 (1977); *State v. Triano,* 147 N.J.Super. 474, 475-76, 371 A. 2d 734, 734-35, *certif. denied,* 65 N.J. 280, 321 A. 2d 241, *cert. denied,* 419 U. S. 883, 95 S. Ct. 148 (1974). *Cf. United States v. Maybury,* 274 F. 2d 899, 905 (2d Cir. 1960); *DeSacia v. State,* 469 P. 2d 369, 379-81 (Alaska 1970) (in a single trial

on a multicount indictment accused acquitted and convicted and conviction subsequently reversed). Some of those courts reason that the jury's findings of fact are inconsistent, and that consequently, the jury acted irrationally. *United States v. McGowan,* 385 F. Supp. at 960-61; *DeSacia v. State,* 469 P. 2d at 380; *United States v. Smith,* 337 A. 2d at 502-03. They assert that this circumstance creates such a high degree of uncertainty with respect to the validity of the jury's action that confidence that the jury's acquittal constituted a determination of issues of ultimate fact is undermined. They conclude that because, under such circumstances, it is impossible to discern what facts were determined by the jury's acquittal, the doctrine of collateral estoppel does not apply. We do not agree.

In our view, there can be no inconsistency in a jury's findings of fact when it acquits on one count and is unable to agree on another count having a common issue of ultimate fact, which if found in favor of an accused would establish his innocence on both counts. In Maryland, a mistrial is equivalent to no trial at all. *Cook v. State,* 281 Md. 665, 671, 381 A. 2d 671, 674 (1978). It is not a final determination and decides no question of fact. Accordingly, a jury's failure to agree, which results in a mistrial, does not establish any facts, and thus cannot establish facts inconsistent with those established by its verdicts of acquittal. *United States v. Smith,* 337 A. 2d at 503-04 (Kern, J., concurring).

*Ashe* requires the doctrine of collateral estoppel to be applied whenever an issue of ultimate fact has once been determined by a valid and final judgment of acquittal. 397 U. S. at 443, 90 S. Ct. at 1194. Here, the only valid and final judgments before us are the jury's verdicts of acquittal. There is no question that those verdicts do constitute a valid determination of issues of ultimate fact. Because the jury's failure to agree did not decide any facts, it did not make the validity of that determination questionable. Accordingly, the doctrine of collateral estoppel applies.

Even if the jury had made inconsistent findings of fact, thus undermining confidence that its acquittal constituted a valid determination of ultimate issues of fact, we would reach

the same result. *Simpson* established that collateral estoppel applies where the validity of a jury's findings of fact in favor of an accused was questionable because a different jury in an earlier trial had resolved the same questions of fact against the accused. *Harris* established that collateral estoppel applies where the validity of a jury's findings was questionable because it was not permitted to consider all the relevant evidence. Those decisions were consistent with the policies, expressed in *Green* and *Kramer* — that the government cannot secure a new trial by means of an appeal even though an acquittal may appear to be erroneous — and that the government may not prove a charge by asserting facts necessarily determined against it by a previous acquittal, no matter how unreasonable that determination may appear to be. Because the primary purpose of the doctrine of collateral estoppel is to protect the accused, we would also apply it here where the validity of the jury's findings is questionable because it made inconsistent findings of fact. Because there was a previous acquittal, the State may not proceed with a second prosecution, even though the previous jury's determination of fact may appear to be questionable.

Other courts rely on different reasoning to conclude that the doctrine of collateral estoppel does not apply when a jury acquits on one count of a multicount indictment and is unable to agree on another count involving a common issue of ultimate fact, which if found in favor of an accused would establish his innocence on both counts. *United States v. McGowan*, 385 F. Supp. at 961; *State v. Roller*, 29 N.J. at 350, 149 A. 2d at 243-44; *State v. Esposito*, 148 N.Y.Super. at 105-08, 371 A. 2d at 1275-76; *State v. Triano*, 147 N.J.Super. at 475-76, 371 A. 2d at 734-35. They say that a primary purpose of barring a trial after an accused has been acquitted on a single count indictment is to encourage prosecutors to bring multicount indictments in order to prevent them from exercising their virtually unbridled discretion to sever related offenses in order to maintain the option of proceeding in multiple prosecutions. *United States v. McGowan*, 385 F. Supp. at 960. They assert that this deterrent purpose is substantially achieved when the prosecution joins in a

multicount indictment all offenses having a common issue of ultimate fact. Additionally, these courts reason that after a jury has failed to agree on one count of a multicount indictment, further prosecution on that count is part of a single trial. *State v. Roller,* 29 N.J. at 350, 149 A. 2d at 243-44; *State v. Esposito,* 148 N.J.Super. at 107-08, 371 A. 2d at 1276; *State v. Triano,* 147 N.J.Super. at 475, 371 A. 2d at 734. They conclude that since there was only a single trial, the proceeding necessitated by the mistrial does not involve the harrassment and oppression incident to multiple prosecutions for the same wrongdoing. Again, we do not agree.

One of the purposes of the doctrine of collateral estoppel is to prevent prosecutors from purposefully using their powers to provide plural opportunities to convict an accused. *Ashe v. Swenson,* 397 U. S. at 445 n. 10, 90 S. Ct. at 1195 n. 10. Another is to encourage care in the preparation and presentation of the prosecutor's initial case in order to prevent relitigation which overburdens already crowded dockets and wastes public funds. Mayers & Yarbrough, Bis Vexari: *New Trials and Successive Prosecutions,* 74 Harv. L. Rev. 1, 32 (1960). The primary purpose of the doctrine of collateral estoppel, however, is to avoid compelling an accused to prove his innocence to two or more juries. More precisely, the doctrine's purpose is to avoid compelling relitigation of a fact material to the question of innocence when it appears substantially certain that a jury has already decided that fact in the accused's favor.

Although the filing of a multicount indictment does achieve the purpose of preventing purposeful prosecutorial maneuvering, it does nothing to encourage careful preparation and presentation by the prosecutor. Moreover, the fact that a successive prosecution was brought in good faith is of no significance. In *Harris,* the Supreme Court said that the State's motivation in bringing successive prosecutions is immaterial. 404 U. S. at 56-57, 92 S. Ct. at 184. In *Turner,* the Supreme Court established that collateral estoppel applies even when a prosecutor is required to bring two separate proceedings because state law prohibits all of the charges against an accused from being joined in a single indictment. 407 U. S. at 369-70, 92 S. Ct. at 2099.

In addition, to say that after a jury has failed to agree on one count of a multicount indictment, further prosecution on that count is part of a single trial is to view the application of collateral estoppel "with the hypertechnical and archaic approach of a 19th century pleading book" rather than "with realism and rationality," as required by the Supreme Court. *Ashe v. Swenson,* 397 U. S. at 444, 90 S. Ct. at 1194. Such a view totally ignores the fact that on a related count in the same trial there has been a valid and final judgment of acquittal which did determine common issues of ultimate fact essential to conviction. As a result, effect is given to the jury's failure to agree, which is a nullity establishing nothing, while a valid and final judgment of acquittal, which determined facts in favor of the accused, is deprived of any and all effect in a successive proceeding.

As a practical matter, under the present circumstances, an accused having once been acquitted by a jury in an initial trial is compelled again to prove his innocence before a second jury in a second trial, solely because in the first trial the State failed to prove his guilt. If the jury in the second trial were to convict on the related offense, inconsistent verdicts in successive trials would result — an acquittal on one count in the first trial and, in the second trial, a conviction on the related count having a common issue of ultimate fact essential to conviction. Under established collateral estoppel principles, such a result is impermissible. *Sealfon v. United States,* 332 U. S. at 578-80, 68 S. Ct. at 239-40.

We now hold that the doctrine of collateral estoppel applies after a jury, at a single trial, acquits on one count of a multicount indictment and is unable to agree upon a verdict on a related count of the same indictment involving a common issue of ultimate fact, which if found in favor of an accused would establish his innocence on both counts. We must now determine whether, under the facts of this case, the accused is precluded from being tried a second time on the related count.[5]

---

5. For similar cases in which the doctrine of collateral estoppel was held applicable and, based upon the facts, retrial on the related count was precluded, see United States *ex rel* Rogers v. LaVallee, 517 F. 2d at 1334;

The record is devoid of any indication that the jury could rationally have found that an armed robbery had not occurred or that the Kims had not been victims of that robbery. In closing argument, both the State and the defense asserted that the only question in dispute before the jury was whether Powers was one of the robbers. The trial court instructed the jury that if it found that Powers was one of the robbers, he would be guilty of robbing Chond Ham Kim, robbing Sea Man Kim, and attempting to rob Sung Ryum Kim.

The State's contention that the jury may have believed that Powers did not personally take or attempt to take property from Chond Ham Kim and Sung Ryum Kim, but may have personally taken property from Sea Man Kim is without merit. In *Ashe,* a similar contention, *State v. Ashe,* 350 S.W.2d at 770, was rejected by the United States Supreme Court which noted:

> " 'If a later court is permitted to state that the jury may have disbelieved substantial and uncontradicted evidence of the prosecution on a point the defendant did not contest, the possible multiplicity of prosecutions is staggering.... In fact, such a restrictive definition of "determined" amounts simply to a rejection of collateral estoppel, since it is impossible to imagine a statutory offense in which the government has to prove only one element or issue to sustain a conviction.' " 397 U. S. at 445 n. 9, 90 S. Ct. at 1194 n. 9 (quoting Mayers & Yarbrough, 74 Harv. L. Rev. at 38).

On the record before us, we conclude that a rational jury could not have grounded its verdict upon an issue other than that of Powers's criminal agency. The single rationally conceivable issue before the jury was whether Powers had

Cosgrove v. United States, 224 F. 2d at 150. For similar cases in which the doctrine of collateral estoppel was held applicable but, based upon the facts, retrial on the related count was not precluded, see United States v. Davis, 369 F. 2d at 780; United States v. Kenny, 236 F. 2d at 131; United States *ex rel* Triano v. Superior Court of New Jersey, 393 F. Supp. at 1071; United States v. Flowers, 255 F. Supp. at 494-95; United States v. Perrone, 161 F. Supp. at 260-61; United States v. Smith, 337 A. 2d at 505-06; People v. Chang, 382 N.Y.S.2d at 614, 86 Misc. 2d at 275.

been one of the robbers. The jury by its verdicts of acquittal found that he had not. The doctrine of collateral estoppel, therefore, precludes a second prosecution for the robbery of Sea Man Kim.

> *Order reversed.*
> *Case remanded for dismissal of the indictment.*
> *Costs to be paid by the Mayor and City Council of Baltimore.*